[Civ. No. 6411. First Appellate District, Division One.—November 10, 1928.]

D. M. LINNARD, Respondent, v. S. SONNENSCHEIN et al., Appellants.

John Ralph Wilson and Huston, Huston & Huston for Appellants.

Sawyer & Cluff and William O'Brien for Respondent.

CAMPBELL, J., *pro tem.*—This appeal is from a judgment entered in favor of plaintiff and against defendants in an action in unlawful detainer.

On September 1, 1923, the plaintiff was in possession of the whole of the Whitcomb Hotel building in San Francisco under a lease for a term of years from the owner thereof. On that date the defendants entered into possession of one of the stores on the ground floor of such hotel building as subtenants of plaintiff and continued in possession until ousted by the sheriff under judgment rendered in this proceeding in August, 1927. From the time of their entry as subtenants until May 1, 1926, the defendants paid to plaintiff as rent for the premises $100 a month and varying additional sums, being five per cent of their reported sales. On March 29, 1926, the defendants were served with a notice changing the terms of the tenancy on and after May 1, 1926, and fixing the rent at $300 per month. On November 1, 1926, according to plaintiff's contention, the defendants were in default under this increased rent in the

sum of $900 or thereabouts. The usual notice to quit and surrender the premises was served and ignored by defendants, who remained in possession of the premises.

The defendants admit the service of two notices, but set up as an affirmative defense that defendants entered into and remained in possession of the premises under a lease from plaintiff commencing on September 1, 1923, for five years and four months at a rental of $100 per month, plus five per cent of the gross sales made by defendants from their store. The lease was pleaded in accordance with its legal effect, and it was not alleged whether it was oral or in writing. At the trial, however, it developed that the lease had never been reduced to writing, defendants contending that there had been an oral lease for five years, arranged for in conversation between plaintiff and the defendant Samuel Sonnenschein prior to the entry in 1923, and that the subsequent entry and possession of the defendants under this oral agreement was sufficient to bring the case under the rule announced in *Schubert* v. *Lowe*, 193 Cal. 291 [223 Pac. 550], and that the oral lease might be shown in defense of an action in unlawful detainer despite the statute of frauds. The answer alleges a number of covenants as part of the lease, including the right of plaintiff to examine defendants' books; covenants regulating assignment and underletting; entry by landlord, and that it was agreed that defendants should have the right to bid on any work in their line of business during the term of the lease that plaintiff might have in connection with the Fairmont and Whitcomb hotels and that they should be awarded the work, if their bid was at the same price as that of any other *bona fide* bidder.

Two questions are involved: One, whether defendants were tenants at will, as found by the court, and the other, did plaintiff by the acceptance of rent under the terms existing prior to the service of the notice changing the terms of the tenancy and also after the notice to quit waive his rights under the notices.

The case of *Schubert* v. *Lowe*, *supra*, is authority for the position of appellants that an action of unlawful detainer partakes of an equitable suit for a forfeiture, and, therefore, it is proper to consider the occupation of the premises by a defendant under an oral agreement to lease as an

equitable defense. The trial court, however, having found against defendants on this issue of the equitable lease, it is only necessary for us to determine whether there is any substantial evidence in the record to support the court's finding.

The testimony of Samuel Sonnenschein is that he called upon plaintiff in December, 1922, and asked for space in the Whitcomb Hotel, which was then being renovated, and offered as rent five per cent of his gross sales. This offer was rejected by plaintiff as not sufficient. Sonnenschein then offered $100 per month and five per cent of the sales, which was satisfactory to plaintiff, and it was agreed that the lease should run for five years. Plaintiff then referred Sonnenschein to Mr. Vail, his manager, to examine the stock and arrange details. There was also to be a glass partition between the store and the hotel lobby. There followed another conversation between Sonnenschein and plaintiff, wherein it was agreed that the proposed lease should be for five years from the time the store was ready for occupancy, and there was a discussion as to giving defendants an opportunity to figure on work in their line for the two hotels operated by plaintiff, namely, the Whitcomb and the Fairmont. In respect to the proposed lease itself plaintiff refused to discuss the details, referring Sonnenschein to his manager, Mr. Vail, his attorney, Mr. O'Brien, and his superintendent, Mr. Mason.

Appellants rely on the case of *Levin* v. *Saroff*, 54 Cal. App. 289 [201 Pac. 961], wherein the elements of a valid lease are enumerated as (1) a sufficient description of the premises; (2) a definite and agreed term; (3) an agreed rental and (4) the time and manner of payment. It is urged that these elements were agreed upon in the conversations between Sonnenschein and plaintiff and that no dispute arose as to the agreed terms until after the entry on September 1, 1923. True, the terms were discussed and the rent fixed at $100 per month and five per cent of the gross receipts, but the time and manner of the payment of this five per cent had not been discussed or considered at all—it was not decided whether it was to be paid monthly, annually or otherwise. Furthermore, the evidence shows that the parties did not intend that their agreement should be confined to the bare essentials of a lease. The proposed agreement was to cover more than merely premises, terms

and rent. At these conversations the parties had discussed some of the essentials and details of the proposed lease, but the final details were to be worked out with plaintiff's subordinates, and when the details were finally agreed to, the agreement or lease was to be reduced to writing and signed by the parties. On the question of the lease being reduced to writing, Mr. Sonnenschein testified: "Q. You know you told me you were very anxious about five or six things, a number of clauses; you have set forth a number of clauses here (referring to the answer), and in the clauses you have set forth, I find there is a clause in reference—that you agreed not to assign the lease or let or underlet it. When was that agreed to? A. That was agreed—one second the time I had— Q. When? A. —the conversation with him in the Fairmont, after December, 1923. Q. After December, 1923? A. Yes. Q. In other words, after you moved into the store? A. Yes, sir. Q. All right. Now, then, I find an agreement here to the effect that you would not use or keep on the premises any articles that the insurance companies might consider dangerous? A. Mr. O'Brien wrote that down. Q. Then this was not agreed to when you moved in? A. It was a regular form of lease, to protect Mr. Linnard. Q. Exactly—and you considered or contemplated at the time you made the agreement that you gentlemen would change—draw a full lease, containing the usual covenants and conditions, and have that lease signed; wasn't that a fact? A. No, I expected him to give me a fifty-fifty lease. Q. You expected a lease, and you expected him to draw it? A. Yes." Mr. O'Brien, attorney for Linnard, testified that he prepared a lease for Mr. Linnard in April, 1923, and that he presented it to Mr. Sonnenschein, but that it was never signed by either party; that he had several subsequent conversations with Mr. Sonnenschein with reference to the proposed lease. After Sonnenschein moved into the store he had conversations with Mr. Huston, the attorney representing Sonnenschein, negotiating with relation to the lease, which negotiations continued down to 1926, and that the lease was never executed.

We find the situation presented then to be that the parties agreed in the main to the provisions of the lease, but not as to all of its details and conditions, which lease it was understood was to be reduced to writing and signed by

the parties, and never having been so reduced to writing and signed by the parties as contemplated, it never became a binding and subsisting obligation upon either. As was said in *Spinney* v. *Downing,* 108 Cal. 666 [41 Pac. 797]: "It is a general rule to which this case presents no exception that, when it is a part of the understanding between the parties that the terms of their contract is to be reduced to writing and signed by the parties, the assent to its terms must be evidenced in the manner agreed upon, or it does not become a binding or completed contract. This is especially true when, as here, the proposed contract contains reciprocal stipulations and covenants upon the part of each as a consideration for the act of the other (*Ambler* v. *Whipple,* 20 Wall. 546 [22 L. Ed. 403]; *Fuller* v. *Reed,* 38 Cal. 99; *Morrill* v. *Tehama etc. Co.,* 10 Nev. 125)." Here we have the reciprocal agreement on the part of the tenant to award to the subtenants the work in their line, if their bid be the same as that of any other *bona fide* bidder.

█ Aside from the fact that the written lease was never executed, the evidence supports respondent's contention that the terms of the lease were not agreed upon prior to appellants' entry on September 1, 1923. The witness O'Brien, employed by respondent to draft the lease, testified that the lease form had been presented shortly after the conversation of April 27, 1923, and long before the entry. "Q. What was it; do you recall the subject of that discussion? A. Well, the principal subject of discussion was whether he (Sonnenschein) should pay $100.00 plus five per cent of the sales of the Market Street store alone, which he claimed was his arrangement with Mr. Linnard, or whether he should pay five per cent on the sales both in the Market Street store and in the factory,"—showing that there was a dispute as to what gross sales of the five per cent applied, which became apparent in April, 1923, and existed at the time of the entry.

After this conversation in April, O'Brien prepared and submitted a draft of the proposed lease. That he had acceded to Sonnenschein's request for a five year and four months term, but adhered to his proposition that the five per cent should apply to both store and factory sales, is evident from the draft of the lease in evidence. When this draft of the lease was presented to Sonnenschein he said he would

submit it to his attorney. In so far as the record shows, the entry was made without any further negotiations or conversations whatever.

When a tenant enters upon real property, pending the completion of negotiations for a lease, he enters at his peril. True, the entry with the consent of the lessor creates the relation of landlord and tenant, but the tenancy is merely a tenancy at will. Thereafter, if the proposed lease is completed, the tenant holds under the lease, but if the lease is not accomplished, the holding is at will, which by the acceptance of rent may become a tenancy from month to month or from year to year. If the rent is paid monthly, the tenancy becomes one of month to month, or if it be agricultural land and the rent is paid annually, the tenancy is from year to year (*Phelan* v. *Anderson*, 118 Cal. 504 [50 Pac. 685]; *Carteri* v. *Roberts*, 140 Cal. 164 [73 Pac. 818]).

The "waiver" defense urged is based upon the acceptance by plaintiff of various sums on account of the rent of the premises after the notice changing the terms of the tenancy and the notice to quit. Acceptance of rent after a notice changing a tenancy or after notice to quit does not necessarily operate to waive the notice. While the unconditional acceptance by a landlord of moneys as rent, which rent has accrued after the time the tenant should have surrendered possession will constitute strong evidence of the landlord's waiver of the notice to quit, waiver always rests on intent and is ever a question of fact (*Alden* v. *Mayfield*, 164 Cal. 6, 11 [127 Pac. 45]). The rule as to the constituents of a valid waiver is quoted from Ruling Case Law (27 R. C. L. 908) in *Craig* v. *White*, 187 Cal. 489, 498 [202 Pac. 648, 652]: "To constitute a waiver within the definition given it is essential that there be an existing right, benefit or advantage, knowledge, actual or constructive, of its existence, and an intention to relinquish it. No man can be bound by a waiver of his rights unless waiver is distinctly made, with full knowledge of the rights which he intends to waive, and the fact that he knows his rights and intends to waive them." So waiver cannot be predicated upon the fact of the acceptance of rent alone. The party relying on a waiver must plead and prove facts from which an actual intention to relinquish the right may be derived. This intention may be manifested by express agreement or

by conduct. If conduct is relied upon, *bona fide* reliance upon such conduct must also appear.

On March 29, 1926, the notice changing the tenancy and increasing the rent was served. On May 21, 1926, defendants herein commenced an action in the superior court at San Francisco seeking the specific enforcement of the alleged oral lease contended for here and claiming damages. Subsequent to the filing of that suit appellants remitted checks and statements of sales in various amounts, purporting to cover rent for the months of June, July, August, and September, 1926. These checks were certified as they arrived by the Whitcomb Hotel auditor and were ultimately cashed. The notice to quit served on October 29, 1926, recited the notice changing the terms of the tenancy; gave credit for the various amounts received on account and demanded payment of the balance due or the surrender of the premises.

It is true, as stated by appellants, that a waiver will be presumed or implied contrary to the intention of the party, if by his conduct the opposing party has been misled to his prejudice into the honest belief that such waiver was intended (*Thompson* v. *Gorner,* 4 Cal. Unrep. 606 [36 Pac. 434]), but here, prior to the notice to quit, no condition was attached to the checks, the payments being made under appellants' claim of a verbal lease evidenced by their suit pending to enforce specific performance of such lease, which lease they were protecting from forfeiture by such payments, and such claim they had knowledge was disputed by respondent. On December 20, 1926, Sonnenschein Brothers wrote Linnard inclosing a check, stating that it was "in payment of rent for the month of December, 1926, under the original lease and agreement with you, and not under the terms or conditions stated in your letter of December 11th, 1926." The letter does not refer to the alleged waiver because of accepting prior checks, but states that the inclosed check was payment under the "original lease and agreement." Obviously, this referred to the claimed equitable lease then being asserted in the action for specific performance and which was being contested and disputed by Linnard. To this letter Linnard replied, stating that appellants were well aware that the terms and conditions under which they were in possession of the premises were then the

subject of litigation. "You apparently admit that in any event you owe the amount for which your check was written, and I am quite willing to give you credit for that amount upon any sums which the court may find are due to me. If you are not contented that I shall accept the sum evidenced by this check without prejudice to the position previously taken by me in respect to your tenancy and the amount of rent due thereunder, kindly advise me." After having waited a week and receiving no reply plaintiff cashed the check. On January 25, 1927, plaintiff received a check for $117, as rent for January, inclosed in a letter stating: "We do not wish to complicate this situation by any agreement that might be the subject of future controversy and for that reason we will continue to remit the rents as we have in the past in accordance with the terms of our lease and whether you accept them as such rests with you. We will not consent to any acceptance of these remittances upon any other terms."

The check inclosed in this letter attaching a condition to its acceptance was returned. Thereafter appellants deposited the monthly checks to Linnard's credit in the Humboldt Bank of San Francisco.

It is apparent that no waiver was intended by respondent and it is equally apparent that appellants were not misled to their prejudice. Under the evidence the court manifestly could conclude that appellants were not misled but that the payments were made to protect their rights under their asserted equitable lease. The finding, therefore, that respondent did not waive the notices find support in the evidence.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 10, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 7, 1929.

All the Justices concurred.