[Civ. No. 25611.   Second Dist., Div. Four.   May 29, 1962.]

CONSUMERS HOLDING COMPANY, Defendant and Appellant, v. THE COUNTY OF LOS ANGELES et al., Defendants and Respondents.

Abrams & Fox and Martin L. Abrams for Defendant and Appellant.

Harold W. Kennedy, County Counsel, David M. Ager and A. R. Early, Deputy County Counsel, Potter & Creim and Bertram L. Potter for Defendants and Respondents.

BALTHIS, J.—This is an eminent domain proceeding by which the plaintiff State of California acquired certain real property from defendant Consumers Holding Co. (which held title to the property and which is sometimes hereinafter referred to as "appellant") pursuant to a stipulated judgment providing for a total award of $205,500. Certain defendants having an interest in the property stipulated with the owner as to their respective shares in the award. However, as to two defendants, County of Los Angeles and N. O. Bakken, doing business as Bakken Plumbing (hereinafter referred to as Bakken), there was no agreement with appellant as to their respective shares in the award. The determination of the respective rights of these two defendants in the award was made by the court sitting without a jury pursuant to

section 1246.1, Code of Civil Procedure, and from the judgment rendered appellant (the owner of the property) appeals.

Having paid the total award into court the state as condemner is no longer involved in the proceeding and is not an interested party on the appeal.

The facts applicable to the claims of both defendants (County of Los Angeles and Bakken) are as follows:

Prior to the filing of the action appellant was constructing an apartment building on the property involved. On February 18, 1959, the California Highway Commission adopted a resolution declaring that the public interest and necessity required the acquisition of the subject property. On February 27, 1959, the state filed its complaint in eminent domain, summons was issued and service was made on appellant. After service appellant ceased construction.

Upon the trial pursuant to section 1246.1, Code of Civil Procedure, the court found that the County of Los Angeles had a valid tax lien for the sum of $1,526.23, that Bakken had a mechanic's lien in the sum of $1,499.70, that said defendants (County of Los Angeles and Bakken) were entitled to share in the award deposited in court in the amounts specified.

In view of the fact that the appeal taken by appellant (as owner) as to the shares of the award given to defendants County of Los Angeles and Bakken presents entirely different issues as to each defendant, they will be discussed separately.

*Appeal as to that portion of the judgment in favor of the County of Los Angeles.*

The special facts on this part of the appeal show that prior to the filing of the eminent domain action the state through its Division of Highways wrote a letter to appellant on January 7, 1959. In this letter reference was made to the fact that construction on the property was in progress and that "The State is prepared to make an appraisal and purchase the property as soon as possible, provided you stop construction immediately." Thereafter on January 23, 1959, the state wrote a second letter to appellant saying "Request is made again that you stop construction immediately. . . . If this is not complied with, we will initiate a condemnation action immediately in order to stop construction."

As above mentioned the action was filed, summons issued and the papers served on appellant on February 27, 1959, and at that time appellant ceased construction.

Appellant then tendered possession to the state but there is no evidence or finding that such tender was accepted.

There was no order made for possession and there is no evidence or finding that there was any physical "taking" of the property by the state before entry of the final order of condemnation on December 19, 1960.

The amount of the taxes found due the County of Los Angeles ($1,526.23) was ascertained by taking the amount of taxes past due for prior years and adding an amount for current taxes (1960-1961). Current taxes were prorated to the date of said final order of condemnation (December 19, 1960).

Both the statutory and the case law of this state establish that real property, the subject of an action in eminent domain by a public agency, is not exempt from taxation until the date title is divested from the owner or there is a physical "taking" of the property by the condemner.

Section 4986 of the Revenue and Taxation Code (as it existed on the dates here involved and prior to the 1961 amendments) provides for the cancellation of taxes where property is acquired by the state, county or other public agency. The section provides for proration of current taxes as follows: "The date for such proration shall be at the time title was transferred to, or possession was taken by, the public agency, whichever time the court determines to have first occurred."

In the instant case the trial court determined that the current taxes should be prorated to the date when title was transferred to the state by the final order of condemnation.

Appellant contends that the effect of the letter received from the Division of Highways, together with the filing of the action on February 27, 1959, compelled the owner (appellant) to cease construction. Appellant then argues that the state exercised a right to take possession of and use the land and premises sought to be condemned and that this was the taking of constructive possession of the property.

If possession of the property is taken by the condemner prior to the transfer of title, then the date of the taking of *actual physical possession* is the important date as far as taxes or assessment liens are concerned and not the date of an order for possession.

In *People* v. *Peninsula Title Guar. Co.*, 47 Cal.2d 29 [301 P.2d 1], the eminent domain action was filed on April 20,

1953, and on the same date an order was made authorizing immediate possession. On June 21, 1953, the owners were required to vacate and the state commenced the removal of buildings and the construction of an overpass thereon. Thereafter, on August 19, 1953, an assessment lien was recorded by the city against the property. The final judgment of condemnation was entered December 2, 1953. The trial court held the assessment lien was effective because title to the property did not pass until the judgment was entered. This was reversed by the Supreme Court, the court holding that an "effective" taking of the property occurred when physical appropriation was made. The court said (47 Cal.2d 29, 35): "In the present case the effective 'taking' by the condemner is advanced from the time of the award to the time of appropriation of the property, that is, June 21, 1953, which was prior to the time of the levy."

It is to be noted that in the above case the court used the date of "appropriation" of the property by the state and not the date of the order authorizing immediate possession.

In *People* v. *Watkins,* 175 Cal.App.2d 182, 189 [345 P.2d 960], the court held that the mere issuance of an order for immediate possession does not divest the owner of title, nor in itself constitute a "taking" and whether there is a physical "taking" is a factual question to be decided by the trial court.

In *People* v. *Joerger,* 12 Cal.App.2d 665, 671 [55 P.2d 1269], the rule is clearly stated: "It thus appears that where there is no prior physical 'taking,' the property is deemed to have been 'taken' when title is divested, as possession follows the title. Where there has been a prior physical 'taking,' the subsequent divestiture of title is merely a confirmation of the original 'taking.' "

In *City of Long Beach* v. *Aistrup,* 164 Cal.App.2d 41, 46 [330 P.2d 282], the court said: "When a condemner obtains an order for posssession of property sought to be condemned prior to judgment and actually takes possession of the property, evicting the owners therefrom, such action constitutes a 'taking' as of the date the condemner goes into actual possession."

Generally, where the taxes become a lien prior to the passage of title or prior to the time title is deemed to have passed to the condemner by a "physical taking," they are to be deducted from the award. (*State of California* v. *Clyne,* 175 Cal.App.2d 204, 208 [345 P.2d 474].)

In view of the fact that in the instant case there

was neither an order made for immediate possession nor any physical possession taken by the state, appellant is compelled to argue that there was a so-called right of possession exercised by the state. The request made by the Division of Highways prior to the filing of the action that construction on the apartment building cease because of the contemplated condemnation action does not constitute a 'taking' of the property. Nor does the filing of the eminent domain action, the issuance of summons and the service thereof constitute a 'taking' of the property. If service of complaint and summons constituted the taking of possession, sections 1243.5 and 1254, Code of Civil Procedure, which provide for the taking of possession after eminent domain proceedings are commenced, would be superfluous.

By commencing eminent domain proceedings the state does not bind itself to take the property and pay for it because thereafter, under certain conditions, the proceedings may be abandoned. (*Pool* v. *Butler,* 141 Cal. 46, 49 [74 P. 444]; Code Civ. Proc., § 1255a.)

Appellant further argues that upon the filing of the condemnation action it tendered the property to the state. This tender was ineffective because it was never accepted by the state.

The trial court here based its judgment in favor of the County of Los Angeles upon the proration of taxes to the entry of the final order of condemnation (December 19, 1960) when title to the property passed to the state; there having been no taking of actual possession by the state prior to that date, such determination is correct and that portion of the judgment is affirmed.

*Appeal as to that portion of the judgment in favor of defendant Bakken.*

Defendant Bakken claimed a portion of the condemnation award as a mechanic's lien claimant. Bakken was the plumbing contractor on the construction project and he filed a mechanic's lien in the amount of $4,461 after cessation of the work. At the time the work ceased on the project the rough plumbing was in and the tubs had been set. At the time of the trial Bakken reduced his claim to $2,161 and after hearing the evidence the court found that Bakken was entitled to the sum of $1,499 from the condemnation award.

Appellant owner makes two points as to this portion of the appeal. He contends that (1) Bakken released any claim

to a mechanic's lien and (2) there was no substantial evidence to support the finding that Bakken was entitled to the sum of $1,499.

The total contract price as adjusted by mutual agreement was $28,171. As the work progressed Bakken submitted weekly invoices for progress payments which totaled $18,080. He was paid for these invoices a few days after each was rendered with separate checks, all bearing an endorsement referring to a specific invoice number as follows:

"Endorsement of this check by payee acknowledges the receipt of payment in full for all labor and/or material supplied to tract 12165, Consumers Holding Company invoice #——."

On each check a separate and different invoice number was filled in. At the time of receiving the weekly checks Mr. Bakken, or his agent, also signed documents in duplicate called "Waiver of Lien," and in each case the document signed referred to the invoice number that was being paid at the time.

The form of waiver of lien used in each case is as follows:

"WHEREAS, the undersigned (N. O. Bakken Plumbing) has furnished labor and/or material on the premises described as Tract (Apartment) (Invoice 1523)

"Now, therefore, we the undersigned for and in consideration of $1.00 and other good and valuable consideration, the receipt whereof is hereby acknowledged, do hereby waive and release any and all liens or claims or rights of lien on said premises on account of labor or materials or both furnished or which may be furnished by the undersigned to the said buildings and premises, prior to and including the date below written.

Date (2-27-59)             (N. O. Bakken Plumbing)
Check No. (1068) ($140.00) (By Edith Bakken) (signed)"

The evidence in the instant case established that Bakken submitted weekly invoices for progress payments; he assumed he would complete the contract and collect the entire amount; there was no effort or intent to have the invoices rendered reflect or cover the exact amount due for the work completed; the invoices were merely general estimates. When the job was prematurely terminated it became necessary to ascertain what proportion of the contract had been completed. At the time of trial Bakken claimed he had performed some 72 per cent of the contract and had been paid for only 64 per cent; the finding of the court was based upon a completion of approximately 70 per cent of the contract.

In each case the endorsement on the check and the waiver of lien is ambiguous because reference is made to the par-

ticular invoice and then followed by words of acknowledgment of full payment or of general release.

In *Moore* v. *Rogers,* 157 Cal.App.2d 192 [320 P.2d 524], while the court upheld the trial court's finding that the document in question was a full release, the rule as to ambiguity is stated as follows p. 196) : "If the release appears to be ambiguous as to what the parties intended it to cover the court could properly consider any testimony of the parties bearing on their intention and understanding."

When a release is ambiguous in that it refers to another document or transaction the court must construe them together to determine the intention of the parties. (*Jersey Island Dredging Co.* v. *Whitney,* 149 Cal. 269 [86 P. 509, 691].)

As the release should carry out the intentions of the parties, the trial court in such case of ambiguity may hear testimony bearing on such intention. (*Sime* v. *Malouf,* 95 Cal.App.2d 82, 110 [212 P.2d 946, 213 P.2d 788] ; *Moore* v. *Rogers,* 157 Cal.App.2d 192, 196 [320 P.2d 524].)

In the instant case, Bakken testified he signed as he received his checks merely as to the amounts billed and appellant did not testify in dispute of this point.

Since there is ambiguity here the typewritten portion referring to the invoice in question must control over the printed form of general release (Code Civ. Proc., § 1862).

There was substantial evidence to support the findings of the trial court that the endorsement of the checks did not constitute full payment and the execution of the general waiver form did not constitute a waiver of the mechanic's lien claim of Bakken. We hold the trial court's conclusion on these matters was correct as a matter of law.

In its final point appellant argues that there was no substantial evidence to support the finding that Bakken was entitled to the sum of $1,449.

The evidence showed the adjusted contract price for the plumbing was $28,171 and that appellant paid Bakken the sum of $18,220. Upon the question of the percentage of the contract completed at the date of cessation of work (February 27, 1959), and upon all the evidence presented, the trial court found that as of such date "defendant Bakken performed seventy percent of the work contracted for which was of the value of $19,719." The record fully supports the trial court in its determination that the contract was 70 percent com-

pleted on the cessation date and that Bakken was entitled to $1,499 from the award.

The judgment as to the interests of defendants County of Los Angeles and N. O. Bakken in the award is affirmed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied June 14, 1962, and appellant's petition for a hearing by the Supreme Court was denied July 25, 1962. Dooling, J.,* participated in place of Traynor, J.

*Assigned by Chairman of Judicial Council.