[Civ. No. 28503. First Dist., Div. One. Dec. 17, 1970.]

REDEVELOPMENT AGENCY OF THE CITY AND COUNTY OF SAN FRANCISCO, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent;
815 MISSION CORPORATION, Real Party in Interest.

**COUNSEL**

Rogers, Vizzard & Tallett, Henry F. Davis and John D. Rogers for Petitioner.

No appearance for Respondent.

Crimmins, Kent, Bradley & Burns and Robert E. Burns for Real Party in Interest.

**OPINION**

**MOLINARI, P. J.**—In this proceeding an alternative writ of mandate was granted to review petitioner's contention that the superior court abused its discretion and acted in excess of its jurisdiction by its order denying petitioner's motion for a writ of assistance permitting it to collect rents upon real property condemned to petitioner by a final order of condemna-

tion and permitting it to occupy and manage vacant portions of said real property.[1]

Petitioner is a duly authorized public agency charged with the redevelopment of the City and County of San Francisco and is vested by law with the authority to exercise the power of eminent domain for the purpose of acquiring real property for such redevelopment purposes. On February 16, 1967, pursuant to the exercise of such power, a judgment in condemnation was entered condemning certain real property owned by the real party in interest (hereinafter referred to as "real party").

The judgment was entered pursuant to a stipulation that the market value of the condemned property was the sum of $490,000 and a stipulation waiving findings of fact, conclusions of law, notice of entry of judgment and the right to appeal from said judgment. The subject stipulation also provided: that petitioner was to deposit said sum of $490,000 in respondent court within 45 days from February 16, 1970, and if said deposit was not made within said period said sum of $490,000 was to bear interest at the rate of 7 percent; that during the 45-day period real party was entitled to all the rents, issues and profits from said property; and that real party would "cooperate fully in the presentation of appropriate rental statements" to petitioner "as required." The sum of $490,000 was deposited with respondent court on March 31, 1970, and on April 16, 1970, it was paid to the real party by the clerk of said court.

On April 2, 1970, petitioner filed a notice of motion for entry of a final order of condemnation and for an order for a writ of possession. Following a hearing on said motion, the respondent court on April 13, 1970 granted petitioner's motion for a final order of condemnation but denied the motion for a writ of possession. The order denying the writ of possession provided that no writ of possession or order of possession with respect to the occupants of the property "shall be issued as to any such occupant" until petitioner furnished such occupant a 90-day written notice of the date of possession as provided by regulations of the federal Department of Housing and Urban Development and until further order of the court. The final order of condemnation was recorded with the Recorder of the City and County of San Francisco on April 13, 1970.

---

[1]Although the order denying petitioner's motion is an appealable order (Code Civ. Proc., § 963, subd. 2), a writ of mandate and/or prohibition may be granted if, under the circumstances of a given case, the court determines that the remedy by appeal is neither speedy nor adequate. (*Carter* v. *Superior Court,* 96 Cal.App.2d 388, 392 [215 P.2d 491].) We deem this case to be one properly the subject of proceedings by way of mandate. (See *Hagan* v. *Superior Court,* 53 Cal.2d 498, 501-502 [2 Cal. Rptr. 288, 348 P.2d 896].)

On April 30, 1970, petitioner filed with respondent court a "Notice of Motion For Order For Writ of Assistance to Collect Rents and Manage Property" and a declaration in support thereof. Although this motion specifically sought a writ of assistance to permit petitioner to occupy the vacant portions of the premises for the purpose of managing the property and collecting rents therefrom, the scope of the motion was apparently enlarged at the hearing thereof by mutual consent to include within its purport the possession of all of the condemned premises and all of the rentals from the occupants or tenants thereof. The court denied the motion but ordered defendant to furnish petitioner with a list showing names of tenants and rental paid by occupants of ground floor premises, excluding the hotel premises.[2] On May 14, 1970, and pursuant to the court's ruling, real party forwarded to petitioner a list of the tenants occupying the ground floor and the amount of rent paid by each tenant to petitioner.

The subject property is a six-story and basement building, the ground floors being used for commercial tenancies and the remainder of said building being used as a hotel occupied by tenants on a transient, weekly or monthly basis. The hotel consists of 140 rooms, of which in excess of one-third are vacant. The real party operates the hotel business and a bar on the ground floor; it occupies a store on the ground floor and leases the remaining stores on the ground floor and an adjacent parking lot to certain tenants. It has remained in possession of the premises since the entry and recordation of the final order of condemnation and has throughout said period collected rents upon said real property from various tenants, including those persons occupying hotel rooms in the hotel portion of said real property.

The subject property is in the "Yerba Buena Center Redevelopment Project Area" in San Francisco. This project is federally assisted and is subject to federal laws and regulations of the Department of Housing and Urban Development (hereinafter referred to as HUD).[3] (See *Thorpe* v. *Housing Authority,* 393 U.S. 268, 276, 279, 283 [21 L.Ed.2d 474, 480, 482, 484, 89 S.Ct. 518].)

We turn now to the federal statute and the regulations promulgated pursuant thereto which we are called upon to interpret and apply in connection with the issues raised in these proceedings. Section 3072 of title 42 of the United States Code provides, in pertinent part, as follows: "As a condition of eligibility for Federal assistance pursuant to a development program, each applicant for such assistance shall satisfy the Secretary that

---

[2]Although the court's order did not so provide, the trial judge in making his ruling observed that petitioner was entitled to the fair rental value of all the subject property.

[3]The parties have stipulated that the regulations promulgated by HUD are binding.

the following policies will be followed in connection with the acquisition of real property by eminent domain in the course of such program . . . (3) the construction or development of any public improvements shall be so scheduled that no person lawfully occupying the real property shall be required to surrender possession on account of such construction or development without at least 90 days' written notice from the applicant of the date on which such construction or development is scheduled to begin."

To effectuate the statutory mandate, the Urban Renewal Handbook of the Department of Housing and Urban Development, chapter 4, section 2, RHA 7208.1, provides, insofar as here pertinent, as follows: "Taking Possession The LPA's [Local Public Agency's] Land Acquisition Policy Statement, submitted with its application for Federal assistance, assures HUD that the LPA will 'not require any person lawfully occupying property to surrender possession without at least 90 days' written notice from the LPA of the date on which possession will be required. [¶] The notice of at least 90 days required by the LPA's statement shall be a written notice and shall be given to an owner-occupant as well as a tenant. If the property is acquired through eminent domain proceedings, the 90-day notice shall not be given prior to the date on which the LPA acquires title to, or the right to possession of the property. . . .'"

█ Petitioner has not given the 90-day written notice specified in the aforementioned statute and regulations to real party, nor has such notice been given to any of the tenants or occupants of the subject premises. Petitioner asserts that such notice is not required because petitioner is not seeking to dispossess real party but seeks only to obtain possession of the "vacant" portions of said real property for the express purpose of enabling petitioner to comply with and fulfill its duties under other HUD regulations, such as giving assistance in the relocation of the occupants of the premises.

Before proceeding to consider petitioner's contention, we observe that when real party accepted the payment fixed in the judgment and the final order of condemnation was recorded in the office of the county recorder, title to the subject property vested in petitioner and it acquired all the appurtenances thereto and the buildings thereon. (Code Civ. Proc., § 1253; *Brick* v. *Cazaux,* 9 Cal.2d 549, 554 [71 P.2d 588]; *Los Altos School Dist.* v. *Watson,* 133 Cal.App.2d 447, 450 [284 P.2d 513]; see *People* v. *Klopstock,* 24 Cal.2d 897, 903 [151 P.2d 641]; 3 Nichols, Eminent Domain, § 9.2[5].) The vesting of such title ordinarily would have entitled petitioner to immediate possession of the property condemned since the right to possession follows the title. (*People* v. *Peninsula Title Guar. Co.,* 47 Cal.2d 29, 32 [301 P.2d 1]; see *Brown* v. *Sweet,* 95 Cal.App. 117, 123 [272 P.

614]; *Jones* v. *Peck,* 63 Cal.App. 397, 402 [218 P. 1030].) In the instant case, however, the "taking" of the property was subject to the federal statute and regulation hereinabove alluded to which petitioner concedes are applicable. Under this statute and the regulation adopted pursuant to it, there is no right of immediate possession but possession can only be had by the giving of the 90-day notice prescribed. In sum, the right of immediate possession under California law yields to the federal requirements to which petitioner acceded when it undertook to seek federal assistance in the subject redevelopment project area. (See *Thorpe* v. *Housing Authority, supra,* 393 U.S. 268, 283.)

In view of the federal statute and the regulation enacted pursuant thereto, the trial court acted properly when it provided in the order for entry of the final order of condemnation "That no writ of possession or order for possession *with respect to the occupants* of said property . . . shall be issued *as to any such occupant* until plaintiff has furnished *to such particular occupant* the 90-day written notice of the date possession will be required, . . ." (Italics added.) We perceive, however, that there is no authority for the additional condition imposed that such possession could not be had "until further order of this court." As we view the right to possession, the only limitation which could properly be imposed on petitioner's right to immediate possession was the giving of the subject 90-day notice. (See *Thorpe* v. *Housing Authority, supra,* 393 U.S. 268, 279-280 [21 L.Ed.2d 474, 482-483].)

██ We are of the opinion, moreover, that the subject statute and regulation in no way purport to limit or restrict the title and estate in the condemned property which vests in the condemner, nor does it purport to grant or create any estate or tenancy in such property in favor of any tenant or occupant save and except the right to remain in possession of the premises lawfully occupied by such tenant or occupant until a notice of at least 90 days is given to such tenant or occupant to surrender possession of said premises. (See *Thorpe* v. *Housing Authority, supra,* 393 U.S. 268, 278-279 [21 L.Ed.2d 474, 481-482].) The subject statute and regulation specifically deal with persons "lawfully *occupying* . . . property" (italics added). The regulation specifically states that the notice required shall be given to an "owner-*occupant* as well as a tenant." (Italics added.) It is clear, therefore, that the statute and the regulation are concerned with persons who are "occupants" irrespective of the status that they have enjoyed prior to the vesting of title in the condemner.

██ Occupancy is synonymous with actual possession. (*McKenzie* v. *Brandon,* 71 Cal. 209, 211 [12 P. 428]; *Brown* v. *Spencer,* 163 Cal. 589, 596 [126 P. 493]; *Nathan* v. *Dierssen,* 146 Cal. 63, 66 [79 P. 739]; *Hart* v.

*All Persons, etc.,* 26 Cal.App. 664, 671 [148 P. 236]; *Nevada Irr. Dist.* v. *Keystone Copper Corp.,* 224 Cal.App.2d 523, 531 [36 Cal.Rptr. 775].) Occupancy signifies actual possession and use of property. (*Davis* v. *Baker,* 72 Cal. 494, 496 [14 P. 102]; *McKenzie* v. *Brandon, supra; People* v. *Simon,* 66 Cal.App.2d 860, 863 [153 P.2d 420].) To "occupy" has also been defined " 'To take or enter upon possession of; to hold possession of; to hold or keep for use; to possess; to tenant; to do business in.' " (*People* v. *Roseberry,* 23 Cal.App.2d 13, 14 [71 P.2d 944]; *People* v. *Ines,* 90 Cal. App.2d 495, 498 [203 P.2d 540].)

 The subject statute and rule, dealing as they do with the possession by an occupant of the premises following the final condemnation of the subject property, do not presume to change or affect the paramount title of petitioner nor the usual attributes of a condemnation proceeding. Here there was an entire taking for which a total award was given. Under such an award real party was reimbursed for the loss of its fee, for the loss of the income stream, and for the loss of any improvements to which it would be entitled under a lease. (7 Nichols, Eminent Domain, § 11.03.) Upon the recording of the final order of condemnation the award stood in place of the subject property and the interests of real party and those of its lessees were satisfied by such award. (4 Nichols, Eminent Domain, §§ 12.42; 12.42[1] and 12.42[3]; see Code Civ. Proc., § 1246.1.) Moreover, by such total taking the estate and interest of real party in the subject property was extinguished and terminated as was the estate and interest of the tenants and lessees of real property. (7 Nichols, Eminent Domain, §§ 11.02; 11.03.)

Adverting to the relationship of landlord and tenant which may have existed between real party and its tenants in said property prior to said taking, such taking resulted in a termination of the relationship, and the leases or tenancies by which the tenants held likewise came to an end. (4 Nichols, *supra,* § 12.42[1]; 7 Nichols, *supra,* § 11.03.) Accordingly, the tenants were no longer obligated to pay rent to real party upon the vesting of title in petitioner. (7 Nichols, *supra,* § 11.03.)

Upon the vesting of title in petitioner it became entitled to the rents, issues and profits accruing from the condemned property (see 6 Nichols, Eminent Domain, § 24.5; and see *Regents of University of California* v. *Morris,* 266 Cal.App.2d 616, 625 [72 Cal.Rptr. 406]), and as between petitioner and the persons lawfully occupying such premises a new relationship was created. Such occupants became petitioner's tenants. That tenancy was either one at will or from month to month or from year to year according to the circumstances. (See *Psihozios* v. *Humberg,* 80 Cal.App.2d 215, 220 [181 P.2d 699]; *Linnard* v. *Sonnenschein,* 94 Cal.App. 729, 735 [272 P. 315]; *Ellingson* v. *Walsh, O'Connor & Barneson,* 15 Cal.2d 673, 675

[104 P.2d 507]; *Phelan* v. *Anderson*, 118 Cal. 504, 505-506 [50 P. 685].) By virtue of the subject statute and regulation to which petitioner acceded, the occupancy by the persons lawfully in possession of the premises was with petitioner's consent. Such possession with the consent of petitioner created the relationship of landlord and tenant, but the tenancy was merely a tenancy at will which could not be terminated except by the giving of the subject 90-day notice. (See *Linnard* v. *Sonnenschein, supra; Ellingson* v. *Walsh, O'Connor & Barneson, supra.*) Such tenancy carried with it the obligation to pay rent by operation of law. (*Ellingson* v. *Walsh, O'Connor & Barneson, supra,* at pp. 675-676.) The liability in such case is for the reasonable value of the use of said premises. (See *Ellingson* v. *Walsh, O'Connor & Barneson, supra,* at p. 676.) We observe here that tenancy at will may become a tenancy from month to month or a periodic tenancy by the acceptance of rent. (*Linnard* v. *Sonnenschein, supra.*) Thus, if the rent is paid monthly the tenancy becomes one from month to month. (*Linnard* v. *Sonnenschein, supra; Phelan* v. *Anderson, supra;* see Civ. Code, §§ 1943, 1944, 1945.)

Directing our attention to the occupancy of the real party as an "owner-occupant," we note that at the time of the taking real party was in actual possession of the hotel premises and a bar and a store on the ground floor. As to the occupants of the parking lot and the store premises on the ground floor (other than the stores occupied by real party), real party was not in actual possession of said premises and was not entitled to arrogate possession to itself by presuming to continue to act as a landlord. As noted above, real party's rights as a landlord were terminated and extinguished by the condemnation proceeding. Accordingly, the occupants of these premises are the persons in *actual* occupation thereof. As to these stores and premises, real party is not an occupant.

In view of the foregoing we conclude that real party occupies the hotel premises and the bar and store on the ground floor as petitioner's tenant at will of such premises. As to the occupants of the remaining stores on the ground floor and the parking lot, they also became petitioner's tenants at will at the moment title vested in petitioner. None of these occupants, including real party, may be dispossessed of the premises occupied by them until the subject 90-day notice is given them. ■ With respect to the occupants of the rooms of the hotel, such parties are tenants of real party since the entire hotel premises are actually in the possession of real party as a tenant at will of said premises. As to petitioner, these roomers or occupants of the hotel rooms are sub-tenants at will. As "occupants" of the rooms they are likewise entitled to the subject 90-day notice before they can be dispossessed. We here point out that the "vacant premises" sought to be possessed by petitioner without the giving of the 90-day notice are

the vacant rooms in the hotel premises. Although these rooms are not occupied by roomers or renters, they are part of the hotel premises which real party "occupied" as a hotel operator at the time title vested in petitioner and which it continues to occupy as petitioner's tenant in the conduct of such hotel business.

 In the light of the foregoing petitioner is entitled to reasonable rent from the occupants for the use of the premises occupied by them from the date that title vested in petitioner. Petitioner is justified, therefore, in demanding rent from such occupants and, if it desires, to convert the tenancy at will into a periodic tenancy by the acceptance of rent. Real party concedes that it is liable for reasonable rent for the use of the premises but takes the position that such use extends to the entire building and not to the portion of the premises actually occupied by it. Accordingly, real party maintains that it is entitled to the rents it has received, and is receiving, until its possession is terminated by the subject 90-day notice from the other occupants. This assertion presupposes that the other occupants have continued in the relationship of landlord and tenant with real party. This contention, for the reasons already pointed out, is without foundation. In this regard we point out that if a condemnee is entitled to collect rents from the condemned premises until he is actually dispossessed, such collection would amount to an unjust enrichment since a condemnee who has accepted the condemnation award, as is the case here, has been fully compensated for the taking of his property. (See *Regents of University of California* v. *Morris, supra,* 266 Cal.App.2d 616, 625.) To permit him to continue to collect rents is tantamount to increasing an award which has already been adjudicated.

We hold, therefore, that real party is liable upon petitioner's demand for the reasonable rent for the occupancy of the hotel premises and the ground floor stores occupied by it. We also hold that petitioner is entitled to such rent from the other occupants of the ground floor stores and the occupant of the parking lot. Accordingly, petitioner is entitled to a writ of assistance permitting it to collect rents from real party and such other occupants. (See *Marblehead Land Co.* v. *Los Angeles County,* 276 F. 305, 308.) With regard to the rents which real party has collected from such other occupants, real party holds the same as a trustee for petitioner and is to deliver and pay the same to petitioner upon its demand subject to all reasonable charges actually paid by real party incident to the management, maintenance and operation of the subject premises. (See *Regents of University of California* v. *Morris, supra,* 266 Cal.App.2d 616, 625.) Since these rents have already been collected and such other occupants have apparently assumed that they were paying the rents to the proper party,

petitioner, upon making such demand for rents, shall indicate its election as to whether such rents are to be applied towards the reasonable value of the use of said premises or whether the amount collected from such occupants is accepted by petitioner as the rent for said premises for the periodic tenancy agreed upon between real party and such occupants.

In order to effectuate the foregoing payments and adjustments, the superior court is directed, upon application of petitioner, to determine the reasonable rent due petitioner from real party and to determine the total amount of rents received by real party from the occupants, other than real party, of the ground floor stores, and the occupants of the parking lot. In making such determination, the superior court shall also determine the amount, if any, and give credit to real party therefor, of the charges actually paid by real party in the management, maintenance and operation of the premises occupied by the occupants of the stores on the ground floor (other than those occupied by real party) and the subject parking lot.

With respect to petitioner's request that it be furnished with the names of the persons occupying the condemned premises and the designation of the premises occupied by them, we observe that such information has been supplied with respect to the ground floor and parking lot occupants. We also observe that petitioner was entitled to obtain this information by direct inquiry since these occupants are its tenants at will. With respect to the occupants of the hotel premises, we note that there is presently in effect an injunction issued by the United States District Court enjoining petitioner from removing such occupants or interfering with their tenancy.[4] This injunction appears broad enough to proscribe any contact with such occupants. In any event, the record is insufficient for a determination by us whether the injunction would be violated if petitioner contacted these occupants solely to inform them of the rights they are entitled to under HUD regulations, as petitioner contends is its only purpose. Under the circumstances it would appear that petitioner's proper remedy would be to seek relief from the federal court which issued the injunction. Accordingly, it cannot be said that the superior court erred in denying petitioner's motion to compel real party to provide petitioner with a list of the names of the occupants of the hotel rooms. In so concluding we do not intend to convey the impression that absent such injunction petitioner is not entitled to such

---

[4] The injunction enjoins petitioner from "(a) Attempting to remove, threatening to remove, or acting to remove (by initiating contacts or making unsolicited offers or otherwise) any resident in the Yerba Buena Redevelopment Project Area D-1 from any premises therein used by such person for residential purposes; and (b) Breaching, terminating, interfering with or attempting to breach, terminate or otherwise interfere with, any relationship of landlord and tenant pertaining to any premises in said area used by the tenant for residential purposes; . . ."

information. We observe, initially, that real party agreed by way of stipulation to furnish such information to petitioner. This information is necessary, moreover, because it is required in order to permit petitioner to give the required 90-day notice to the occupants in order to conform to the subject federal statute and regulation. This information is also required in order to enable petitioner to fulfill its duties under other HUD regulations, such as giving assistance in the relocation of the occupants of the premises. Real party is in the best position to provide such information since it has continued in possession of said premises and has maintained the relationship of landlord and tenant with these occupants.

Finally, consistent with the foregoing, we hold, for the reasons hereinbefore set out, that petitioner is not entitled to a writ of assistance to permit it to occupy the vacant rooms in the hotel without giving real party the subject 90-day notice. This holding, of course, is not intended to preclude petitioner from taking immediate possession of any of the ground floor stores or the parking lot if such premises are abandoned or voluntarily vacated by the occupants thereof.

In summary, it follows that petitioner is not entitled to a writ of mandate commanding respondent court to vacate its order of May 11, 1970 denying petitioner's motion for an order for a writ of assistance to permit petitioner to occupy the vacant portions of said condemned premises, for the management thereof, to compel real party to furnish petitioner a list of the occupants of the hotel rooms, and to collect rents from said occupants; but petitioner is entitled to a writ of mandate directing the trial court to vacate its order of May 11, 1970 denying petitioner's motion for an order for a writ of assistance to collect rents from real party and the occupants of the ground floor stores and the adjacent parking lot. Petitioner is also entitled to a writ of mandate directing the trial court to enter an order for a writ of assistance to permit petitioner to collect rents upon the real property involved from real party for the premises occupied by it and from the other occupants of the ground floor stores, and from the occupant of the adjacent parking lot. The trial court is also directed, if application is made by petitioner, to enter an order fixing the reasonable rent due from real party for the premises occupied by it and to require real party to account to petitioner for the rents received from the other occupants of the ground floor stores and the parking lot. Upon such accounting the trial court shall also determine the amount, if any, and give credit to real party therefor, of the reasonable charges actually paid and discharged by real party in the management, maintenance and operation of the premises occupied by the tenants of the

stores on the ground floor, other than those occupied by real party, and the subject parking lot. The trial court is directed to make any necessary orders to effectuate such accounting. Let the writ issue accordingly.

Sims, J., and Elkington, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied February 10, 1971.