[Civ. No. 12450. Fourth Dist., Div. Two. Dec. 3, 1973.]

CITY OF ONTARIO, Plaintiff and Respondent, v.
MIKE KELBER, Defendant and Appellant;
COUNTY OF SAN BERNARDINO, Defendant and Respondent.

## COUNSEL

Redwine & Sherrill, Forrest D. Theobald and Justin M. McCarthy for Defendant and Appellant.

Lynn W. Kloepfer and Philip F. Lanzafame for Plaintiff and Respondent.

Stanford D. Herlick, County Counsel, and Robert R. Walker, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**TAMURA, J.**—The condemnee in the underlying eminent domain proceeding appeals from an order determining that he is responsible for ad valorem taxes accruing on the subject property to the date of recordation of the final order of condemnation.

The pertinent facts are not in dispute.

The City of Ontario (city) commenced eminent domain proceedings to acquire Kelber's property for airport purposes. The issue of just compensation was heard by a jury and judgment of condemnation was entered on July 29, 1970. On May 24, 1972, following the city's unsuccessful appeal from the judgment,[1] the city deposited with the clerk of the court below

---

[1]The judgment was affirmed by this court on April 17, 1972. (*City of Ontario v. Kelber*, 24 Cal.App.3d 959 [101 Cal.Rptr. 428].)

the amount of the award, accrued interest, and costs.[2] Thereafter the funds, except for $10,500, were distributed to the parties entitled thereto, the $10,500 being retained to cover a disputed ad valorem tax claim by the County of San Bernardino. Kelber contended the award should not be subject to ad valorem taxes assessed against the property pending the city's unsuccessful appeal from the judgment.

The trial court held a hearing on the issue of tax liability and determined that Kelber "is responsible for the ad valorem taxes on the subject property to June 8, 1972, the date the Final Order of Condemnation was recorded. . . ." Kelber appeals from the order.

Kelber advances two theories in support of his contention the award should not be subject to ad valorem taxes allocable to the period between the judgment and the final order: (1) For tax liability purposes, the final order of condemnation should be deemed to have vested title in the condemner as of the date of the judgment and (2) inasmuch as the tax liability accrued during the city's unsuccessful appeal, to require the condemnee to bear it would constitute a denial of just compensation.

■ For reasons which follow, we have concluded that the trial court's resolution of the only issue before it was correct.

Subject property, being within the boundaries of the city, is exempt from taxation during city ownership. (Cal. Const., art. XIII, § 1.) As between a condemner and a condemnee, the condemner is only liable for ad valorem taxes on the property that would be subject to cancellation under Revenue and Taxation Code section 4986. (Code Civ. Proc., § 1252.1.)[3] The date for proration of taxes is "the time title was transferred to, or possession was taken by, the public entity, whichever time the court determines to have first occurred. . . ." (Rev. & Tax. Code, § 4986, subd. (2)(b).)[4] In

---

[2]The city deposited $1,296,664.37, to cover the following items: Just compensation —$1,150,000; 7 percent interest on the award from July 29, 1970 to May 24, 1972— $144,519.85; costs (trial and appellate)—$2,144.52.

[3]Code of Civil Procedure section 1252.1 provides in relevant part: "As between the plaintiff and defendant, the plaintiff is liable for any ad valorem taxes, penalties and costs upon the property sought to be taken by eminent domain that would be subject to cancellation under Chaper 4 (commencing with Section 4986) of Part 9 of Division 1 of the Revenue and Taxation Code if the plaintiff were a public agency covered by Section 4986 of the Revenue and Taxation Code and if such taxes, penalties and costs had not been paid, whether or not the plaintiff is such a public agency."

[4]Revenue and Taxation Code section 4986, subdivision (2)(b), provides: "(b) If at the time exemption from sale attaches to land or improvements acquired by

the case at bench, there was no order of possession. The time for proration of taxes was, therefore, the date title was transferred. Title vests in the condemner on the date of recordation of the final order of condemnation. (Code Civ. Proc., § 1253;[5] *Brick* v. *Cazaux,* 9 Cal.2d 549, 554 [71 P.2d 588]; *Redevelopment Agency* v. *Superior Court,* 13 Cal.App.3d 561, 567 [91 Cal.Rptr. 886].) Thus, the date for proration in the present case was June 8, 1972. All delinquent taxes, penalties and costs which were a lien against the property and a pro rata portion of the current taxes for the fiscal year in which title was transferred to the city became a lien upon the award and were payable therefrom.[6] (Rev. & Tax. Code, § 4986, subd. (2)(b); *Consumers Holding Co.* v. *County of L. A.,* 204 Cal.App.2d 234, 239 [22 Cal.Rptr. 106]; see *Redevelopment Agency* v. *Penzner,* 8 Cal. App.3d 417, 423-424 [87 Cal.Rptr. 183].)

---

a public entity the purchase price thereof is deposited in the registry of a court in an eminent domain proceeding, all delinquent taxes, penalties and costs which were or are a lien against such land or improvements and the pro rata share of the current taxes, penalties and costs which are a lien against such land or improvements, prorated for the fiscal year for which such current taxes, penalties and costs are or will be due and payable, shall be paid out of the award. The date for such proration shall be at the time title was transferred to, or possession was taken by, the public entity, whichever time the court determines to have first occurred. If the amount of the current tax is not ascertainable at the time the proration is made the same shall be estimated and computed by the court based upon the last equalized assessed value of the property in its entirety regardless of any segregation which may occur by reason of the taking, and the tax rate levied on the property for the immediate prior year. The court shall further order canceled the public entity's portion of any prorated current tax. The subject of the amount of the taxes which may be due on the property shall not be considered relevant on any issue in the condemnation action, and the mention of said subject, either on the voir dire examination of jurors, or during the examination of witnesses, or as a part of the court's instructions to the jury, or in argument of counsel, or otherwise, shall constitute grounds for a mistrial in any such action.

"No cancellation under paragraph (b) of subdivision (1) of this section shall be made in respect of all or any portion of any tax, or penalties or costs attached thereto, collectible by county officers on behalf of a municipal corporation without the written consent of the city attorney or other officer designated by the city council unless the city council, by resolution filed with the board of supervisors, has authorized the cancellation by county officers. The resolution shall remain effective until rescinded by the city council.

"For the purpose of this subdivision the date of possession shall be the date after which the plaintiff may take possession as authorized by order of the court or as authorized by a declaration of taking."

[5]Code of Civil Procedure section 1253 prescribes the contents of a final order of condemnation and provides in relevant part: ". . . The title to the property described in the final order of condemnation vests in the plaintiff for the purposes described therein upon the date that a certified copy of the final order of condemnation is recorded in the office of the recorder of the county."

[6]The county represents that taxes for the period after June 8, 1972, have been cancelled.

Kelber attempts to bring himself within the principle enunciated in *People* v. *Peninsula Title Guar. Co.,* 47 Cal.2d 29 [301 P.2d 1]. He reaches too far. In *Peninsula* a special assessment lien was recorded against the property after the state, pursuant to an order of possession, had required the owner to vacate, had demolished buildings, and had commenced construction of the highway improvement. In reversing an order of the trial court directing that the assessment lien be paid from the condemnation award, the Supreme Court held that while ordinarily property is not "taken" until the final order is entered, when "in addition to a mere taking of possession by the condemner there is also such a substantial change in the status of the land taken and the condemnee's relation to it as to constitute, in effect, a divestiture for all practical purposes of all of the former owners' interest, the strict rule should not apply." (47 Cal.2d 29, 32.) The actions of the condemner in *Peninsula* clearly constituted a "de facto" taking. In the instant case there was no interference with the condemnees' physical possession, either by an order of possession or otherwise.

Kelber admits that in *Peninsula* and cases following it, the condemner actually divested the property owner of all rights in the property except bare legal title, and he concedes that such a situation did not exist in the present case. He nevertheless contends that the present case bears a sufficient analogy to *Peninsula* to warrant application of the "divestiture of title" theory in that following entry of the judgment in condemnation and during the pendency of the city's unsuccessful appeal, he could not as a practical matter have rented, sold or developed his land. He argues that the delay in obtaining the final order of condemnation was solely for the benefit of the condemner and that, therefore, title should be deemed to have passed as of the date the judgment was entered.

The existence of the judgment in condemnation unquestionably impaired to some degree the condemnee's use and enjoyment of his property. But recordation of a final order is not, as Kelber characterizes it, a "mere technicality." Until then, the condemnee remains the legal owner and as such is entitled to the rents, issues, and profits from the land. (See *Redevelopment Agency* v. *Superior Court, supra,* 13 Cal.App.3d 561, 569.) Moreover, as recompense for any loss sustained by the practical restrictions upon the condemnee's dominion over his property occasioned by the judgment in condemnation, he is entitled to interest on the award from the date of the judgment, subject to offset by the amount of any rents, issues, or profits he received while in possession.[7] (Code Civ. Proc., § 1255b; *Bellflower City*

---

[7]Code of Civil Procedure section 1255b, subdivision (b), provides: "(b) If after the date that interest begins to accrue the defendant continues in actual possession of or receives rents, issues and profits from the property, the value of

*School Dist.* v. *Skaggs,* 52 Cal.2d 278, 281 [339 P.2d 848]; *Southern Cal. Gas Co.* v. *Joseph W. Wolfskill Co.,* 212 Cal.App.2d 882, 889 [28 Cal. Rptr. 345]; *People* v. *Superior Court,* 145 Cal.App.2d 683, 691-692 [303 P.2d 628].) Kelber has been paid $144,519.85 as interest on the award from the date of the judgment to the date of the deposit in court. He was thus compensated for any loss resulting from his qualified dominion over his land pending the city's unsuccessful appeal from the judgment. The contention that just compensation requires the tax liability to be absorbed by the condemner as "costs" is untenable for the same reason.[8]

The order is affirmed.

Gardner, P. J., and Gabbert, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 31, 1974. Wright, C. J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.

---

such possession and of such rents, issues and profits shall be offset against the interest that accrues during the period the defendant continues in actual possession or receives such rents, issues or profits."

[8]The proceedings giving rise to the present appeal involved a determination of the respective rights of the county and the condemnee in the award. The city, having deposited with the court the amount of just compensation, interest, and costs, is not an interested party to this appeal. (*Consumers Holding Co.* v. *County of L. A., supra,* 204 Cal.App.2d 234, 235-236.) However, in view of our disposition of the appeal, we perceive no useful purpose to be served by entering a separate order dismissing the appeal as to the city.