SESSIONS INC., a California corporation, Plaintiff,

v.

Rogers C. B. MORTON, Secretary of the Interior, et al., Defendants.

Civ. A. No. 71–373–R.

United States District Court,
C. D. California.

July 31, 1972.

James M. Schlecht, Allen O. Perrier, Schlesinger, Schlecht & McCullough, Palm Springs, Cal., for plaintiff.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Philip S. Malinsky, Asst. U. S. Attys., Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

REAL, District Judge.

Plaintiff asks review of a decision of the Secretary of Interior terminating Lease No. PSL–37 executed between plaintiff's and defendants' predecessors in interest; for declaratory judgment declaring the rights and obligations of the parties; and for plaintiff's attorneys fees in prosecuting this action.

### BACKGROUND

Plaintiff's predecessor in interest, Rancho Trailer Park, Inc., on April 11, 1960 entered into seven separate leases covering 34.5 acres of land owned by seven members of the Agua Caliente Band of Mission Indians. The leases contain identical covenants. Provisions of each lease are adjusted to accommodate the different rent (each was to receive a varying percentage of the gross income on the entire parcel), description of the land, parties, and the costs of improvements for each individual parcel. Each of the leases to become effective required the concurrence of the Secretary of Interior. Approval was given to make the leases effective on January 27, 1961.

Lease PSL–37, the subject of this litigation was entered into between Carrie Pierce McCoy, the predecessor in interest to defendants Lawrence Pierce and Inman McCoy and Rancho Trailer Park, Incorporated, the predecessor in interest of plaintiff Sessions Inc.

The dispute focuses on Articles 7, 8 and 11 of Lease PSL–37 and the claims of non-performance by plaintiff and waiver of performance by defendants.

Article 7 provides in its pertinent part:

"7. IMPROVEMENTS

As a material part of the consideration for this lease the Lessee covenants and agrees that within five (5) years after the date of approval of this lease, Lessee shall have completed construction of permanent improvements on the leased premises at a cost of and having a reasonable value of SEVENTY THOUSAND DOLLARS ($70,000).

Improved trailer spaces on the leased premises at the date of approval of this lease shall be considered as part of such required permanent improvements with a value of FIFTEEN HUNDRED DOLLARS ($1500.00) for each such improved trailer space."

Article 8 provides:

"8. GENERAL PLAN AND DESIGN

Within two (2) years after the approval of this lease, the Lessee shall cause to be prepared and submitted to the Secretary for approval, a general plan and architect's design for the full improvement and complete development of the entire leased premises. The Secretary shall not unreasonably withhold approval and shall either approve or state his reasons for disapproval within thirty (30) days after said plans are presented to him by the Lessee."

Article 11 provides:

"11. COMPLETION OF DEVELOPMENT

It is understood and agreed that the Lessee will complete the full development and improvement of the leased premises in accordance with the general plan and architect's design, approved in accordance with Article 8, above, within five (5) years from the date of approval of this lease. If full improvement and development as specified is not completed within that

period of time, the Lessee covenants and agrees that, at the request of the Secretary, Lessee will enter into an amendment of this Lease, deleting from the leased premises those portions thereof not fully improved and developed. In the event that a portion or portions of the leased premises are so deleted, the aggregate minimum and percentage rentals under this lease and the leases on the six contiguous parcels set out in Article 1(b) hereof shall not be decreased, but such aggregate minimum and percentage rentals shall be reapportioned among the Lessors on the basis of the comparative values of the lands remaining under this lease and the leases on the six contiguous parcels. For the purpose of this re-apportionment, the value of the leased premises herein described shall be TWO HUNDRED AND FIFTY DOL-LARS ($250.00) per front foot for South Palm Canyon Drive frontage, to a depth of two-hundred and fifty feet (250'), and SEVENTY-FIVE HUN-DRED DOLLARS ($7500.00) per acre for the remaining area."

Plaintiff came into possession of the leased premises from its predecessor in interest on January 1, 1962. Almost immediately plaintiff requested a one-year extension for submitting the general plan and architect's design required by Article 8 of the lease. Replying to the requested extension, the Bureau of Indian Affairs advised plaintiff that January 26, 1963 was the date contemplated by the term of the lease for the submission of the general plan of development.

Again, on December 22, 1962, plaintiff requested an additional year for compliance with the provisions of Article 8. During the negotiation of this requested extension, plaintiff on February 11, 1963 proposed the elimination of the improvement requirements of the lease. Plaintiff suggested that the property be maintained as a trailer park with a 10% increase in the minimum rental provided

in the lease. To determine the acceptability of such a proposal, the Bureau of Indian Affairs requested an economic survey. This survey was never submitted.

Plaintiff was notified on September 23, 1965 that the Bureau of Indian Affairs would be willing, subject to the approval of the Indian lessors, to amend the leases to provide the financing opportunities plaintiff required to develop the property. This development, as required by the lease, was to be completed by January 27, 1966 after the submission of appropriate plans.

On January 8, 1966 plaintiff again requested a one year extension of the lease obligations. Plaintiff with this request detailed the difficulties involved in financing any development under the then existing conditions of the lease. At a meeting of January 5, 1966 the parties had agreed to the preparation of a supplemental agreement to extend the compliance date for one year. As part of the extension, plaintiff was to pay an increased minimum rental of 10%. These arrangements were confirmed to plaintiff by the Bureau of Indian Affairs on February 2, 1966.

On March 24, 1966 plaintiff is claimed to have submitted two plans for development of the leased property.[1] These plans required changes in the terms of the leases. Again, plaintiff offered a 10% increase in the minimum rental if the Lessors would agree to the requested changes.

Pending an appraisal to determine the minimum fair annual rental value of the leased premises, plaintiff agreed to an increase of 10% in the minimum rental. As part of the arrangement, Lessors agreed to suspend any default action until 60 days after the receipt of the appraisal.

On September 20, 1966, plaintiff was notified that the appraised fair rental was $88,000. Plaintiff was given 60 days to pay the new minimum rentals,

---

1. Although the evidence is confusing, it appears that no plans were ever received by the Area Director of the Bureau of Indian Affairs.

proceed with the development of the premises, or surrender the property to the Lessors.

On October 28, 1966, plaintiff, through its attorneys, made proposals for amendment of the leases to permit continued possession by plaintiff. This offer included (1) an extension of the term to 65 years with payment of a minimum rental of $88,000 during the last 20 years of the term, but payable over the entire term averaging $64,500 per year, or (2) proceeding with separate development of each separate leasehold according to submitted plans. Both alternatives required substantial changes in the terms of the leases.

After meeting personally, plaintiff was notified on November 16, 1966 of the unacceptability of the proposals made. Lessors, however, agreed to accept a 10% increase in the minimum rentals pending further negotiation of the October 28, 1966 proposals.

Intensive negotiations were undertaken and on February 28, 1967 plaintiff was given 30 days to negotiate a new long term lease at a rental somewhere between the appraised fair rental of $88,000 and the rental then being paid. At that meeting all the Lessors concurred that the leases should be cancelled. Alternatively, plaintiff was offered a new 5 year lease or revocable permit to allow for development. This offer was rejected on April 13, 1962 by plaintiff. Plaintiff then offered its performance and insisted upon compliance with the terms of the leases executed April 11, 1960.

Negotiations continued sporadically without success until September 23, 1969 when plaintiff was mailed an order to show cause why PSL–37 should not be cancelled because of default in performance of Article 5, Annual Accounting, Article 7, Improvements, Article 8, General Plan and Design, and Article 11, Completion of Development.

On October 16, 1969 plaintiff was given 60 days to cure the alleged defaults in performance of Articles 7, 8 and 11. Notification of the cancellation of PSL–37 was given on December 16, 1969 pursuant to the 60 day notice.

Plaintiff filed its Petition For Appeal of the cancellation and proceeded pursuant to 25 CFR Part 2. On December 16, 1970 the Commissioner, Bureau of Indian Affairs, sustained the cancellation of PSL–37 for noncompliance with Article 7, Improvements, Article 8, General Plan and Design, and Article 11, Completion of Developments. The Commissioner's decision is appended as Appendix A hereto.

On January 11, 1971, the Secretary of Interior affirmed the decision of the Commissioner and on February 12, 1971 reconsideration was denied. Termination of the lease was ordered February 17, 1971. The denial of the Secretary is appended as Appendix B hereto.

## REVIEW OF THE ADMINISTRATIVE PROCEEDINGS

Judicial review of the action of the Commissioner, Bureau of Indian Affairs and the Secretary of Interior is permitted by Title 5 U.S.C. § 702.[2] Defendants claim, however, that the acts complained of by plaintiff are discretionary and therefor not reviewable by any court.[3]

■■ Ferry v. Udall, 336 F.2d 706 (9th Cir. 1969), urged by defendants is

---

2. Title 5, U.S.C. § 702 provides:
   " § 702. Right of review.
   A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

3. Title 5, U.S.C. § 701(a) provides:
   " § 701. Application; definitions.
   (a) This chapter applies, according to the provisions thereof, except to the extent that—
   (1) statutes preclude judicial review; or
   (2) agency action is committed to agency discretion by law."
   Defendants argue that Title 25, U.S.C. § 415a makes the acts of the Secretary discretionary.

inapposite. In *Ferry, supra,* the Court was concerned with the procedures invoked by the Secretary of Interior in deciding, if, " * * * in his judgment it would be proper * * *," to sell public lands. 43 U.S.C. § 1171. *Acceptance of a bid* was in issue. Here we are considering the determination by the Secretary that a *breach in the covenants* of the lease has occurred and has terminated the rights and obligations of the parties. In taking this action the Secretary has acted quasi-judicially to determine the factual contentions concerning a lease in which he, as Secretary of Interior, acting on behalf of the trustee United States of America, is a party. This is not a case where the Court is asked to review the grant or denial of a lease to which the principle of non-reviewability expressed in *Ferry, supra,* would be applicable. Grant or denial of a lease is the non-reviewable discretion permitted in 25 U.S.C. § 415.[4] Nowhere in the statutory scheme of the leasing of Indian lands is there granted to the Secretary the discretion to terminate or cancel an approved lease thereby extinguishing the rights and obligations of the contract. The discretion of the Secretary, charged with the administration of Indian affairs, in permitting Indian lessors to seek cancellation, or conversely, to excuse a default in performance is not the subject of judicial review for such action is " * * * by law committed to agency discretion * * *." See Wyoming v. United States, 255 U.S. 489, 41 S.Ct. 393, 65 L.Ed. 742 (1921).

Mollohan v. Gray, 413 F.2d 349, (9th Cir. 1969) relied upon by defendants is also distinguishable. Although the Court in *Mollohan, supra,* appears to speak in terms of cancellation, analysis of the facts makes it clear that it was *continued use* (non-renewal) of part of the grazing allotments granted to plaintiff on an annual basis that concerned the Court.

■ Assuming, arguendo, that cancellation was the issue the case is yet distinguishable since cancellation of grazing allotments is by statute [43 U.S.C. § 315 b] committed to the Secretary's discretion. Here, extinguishment of the rights and obligations of the parties must abide a determination of facts showing a breach of the contractual terms of the lease.[5] Such a function, judicial in scope, is not entrusted to the Secretary but rather is reserved to court action, either seeking declaratory relief to determine the respective rights and obligations of the parties or suit by a lessor to recover possession of the leased premises arising—1. from a right of re-entry reserved in the lease contract, or 2. arising by judicial forfeiture of the leasehold estate.

To hold, as defendants urge, that the Secretary's decision is a binding termination of the lease if supported by substantial evidence in the administrative record, would make one of the interested parties to the lease [6] the final arbiter of the respective rights and obligations of the parties to the lease contract. Such a ruling would be anathema to the concept of due process, equally applicable to administrative proceedings as it is to the judicial actions of our court system. Certainly, such a determination is not contemplated by 25 U.S.C. § 415 nor is it supported by judicial precedents.

---

4. Title 25, U.S.C. § 415 provides in its pertinent part:

   "§ 415. Leases of restricted lands for public, religious, educational, recreational, residential, business, and other purposes.

   Any restricted Indian lands . . . may be leased by the Indian owners, with the approval of the Secretary of the Interior, for . . . business purposes . . . ."

5. Article 23 of PSL–37 provides for the procedures to be invoked upon default.

6. The position of the Secretary through the Bureau of Indian Affairs as representing the United States as Trustee for Indian lands; in negotiating the terms and approving the lease; in continuing as the approving authority for plans and improvements makes him an "interested party." The Indian lessors in this respect cannot be separated from the functions of the Bureau of Indian Affairs.

■ The action of the Secretary in the approval or denial of a lease in the first instance presents a totally different circumstance. In deciding approval or denial, the Secretary determines to become, or not to become, a "party" to the offered transaction. Viewed as such, it is clear that the Secretary's affirmance of the Commissioner's ruling is not a binding adjudication of the rights and obligations of the parties, but rather the grant of permission to defendants Lawrence Pierce and Inman McCoy (the Indian lessors) to invoke the default provisions (Article 23) of the lease and, if necessary, proceed with court action to effectuate the desired forfeiture of the leasehold estate.

There is nothing for the Court to review under the Administrative Procedure Act.

### DECLARATORY RELIEF

Plaintiff's second cause of action requests declaratory judgment to determine the rights and obligations of the parties under Articles 6, 7, 8 and 11 of Lease No. PSL–37.

Title 28, U.S.C. § 2201 provides in its pertinent part:

"§ 2201. Creation of remedy.

In a case of actual controversy within its jurisdiction . . ., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . ."

There is presented in this second cause an actual controversy with the defendants claiming the right to terminate and cancel PSL–37 for breach of covenants and plaintiff's claims of no breach or excuse of nonperformance. The conflict in claims of the parties makes this matter appropriate for declaratory relief.

1. Applicable law.

28 U.S.C. § 1360 provides in its pertinent part:

"§ 1360. State civil jurisdiction in actions to which Indians are parties.

(a) Each of the States . . . listed in the following table shall have jurisdiction over civil causes of action tween Indians or to which Indians are parties . . ., and those civil laws of such State . . . that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State. . . .

\*　\*　\*　\*　\*　\*

California . . . . All Indian country within the State."

■ Defendants claim that the grant of management of all matters involving Indians of 25 U.S.C. § 2 [7] to the Commissioner of Indian Affairs in some manner restricts the application of "civil laws" as used in Section 1360 only to legislative enactments and not to the decisional law of State courts. Defendants misconceive both the scope of "civil laws" and the grant of "management" to the Commissioner. The legislative history makes it clear that the Congressional grant of State jurisdiction to Indian matters was twofold—1. to withdraw Federal responsibility for Indian affairs wherever practicable; and 2. to make Indians full and equal citizens in the states in which they reside.[8] That purpose can be accomplished only by making the rights and duties created by contracts involving Indians, subject to the civil laws, both statutory and deci-

7. 25 U.S.C. § 2 provides:
"§ 2. Duties of Commissioner.
The Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe, have the management of all Indian affairs and of all matters arising out of Indian relations."

8. H.R.Rep.No.848, 83d Cong., 1st Session (1953) 2 U.S.Code, Cong. & Admin.News, p. 2409 (1953).

sional, of State courts within the grant of Section 1360.

Nor is 25 U.S.C. § 2 inconsistent with that legislative intent. Section 2 simply gives the Commissioner management responsibility for the conduct of Indian affairs. Nothing therein either expressly or implicitly, precludes the application of State law—statutory or decisional—to the interpretation and enforcement of rights and duties of Indians created by the exercise of that management capability.

25 U.S.C. § 415 [9] neither adds nor detracts anything from the grant of State jurisdiction provided in 28 U.S.C. § 1360. Section 415 merely gives the Secretary of Interior supervisory power over the negotiation of the terms of a lease of Indian lands. No restriction is made upon State courts—by statutory or decisional "civil laws"—to interpret or enforce the approved terms of the lease contract. Defendants have mistakenly confused the management and supervisory function of the Secretary with the rights and duties created by the contract which must be interpreted and enforced in conformity with—in this case—the civil laws—statutory and decisional of the State of California.[10]

2. Performance or breach?

■ The obligations of plaintiff's performance of Lease No. PSL–37 are delineated (for the purposes of this litigation) by Articles 7, 8 and 11.

Article 8 required the submission to the Secretary of Interior for approval of a general plan and architect's design for full improvement and complete development of the entire leased premises. This general plan was to be submitted

within two years of approval of the lease.[11]

Article 7 required plaintiff to complete construction of permanent improvements upon the leased land within 5 years of the approval of the lease. Improvements having a reasonable value of $70,000 with credit for each improved trailer space in the sum of $1500.00 were required to be completed upon the leased property.

Article 11, like Article 7, requires completion of improvements in accordance with the approved general plan and architect's design within 5 years of the date of the approval of the lease. By notice from the Bureau of Indian Affairs, evidencing the agreement of the parties, the starting date for performance of the obligations of Articles 8 and 11 was established as January 27, 1961. Submission of a general plan and architect's design was therefore due January 26, 1963.

Although requested, no extension of the period for submission of the general plan and architect's design was ever granted to plaintiff. January 26, 1963 came and went and no general plan and architect's design was submitted. Plaintiff was, therefore, in default of Article 8 of PSL–37.

The due date for performance of the obligations of Articles 7 and 11 was January 26, 1966. Again, although requests for extension of this date were made by plaintiff, none was given. With the failure of the completion of the required improvements on January 26, 1966, plaintiff was in default of Articles 7 and 11 of PSL–37.

9. 25 U.S.C. § 415 provides in its pertinent part:
 "§ 415. Leases of restricted land for public, religious, educational, recreational, residential, business, and other purposes.
 Any restricted Indian lands . . . may be leased by the Indian owners, with the approval of the Secretary of the Interior . . . ."

10. Agua Caliente Band of Mission Indians v. County of Riverside, 306 F.Supp. 279 (C.D.Cal.1969) affirmed 442 F.2d 1184.

11. The lease was approved October 21, 1960.

### 3. Waiver of default.

Plaintiff claims that the performance of the obligations imposed by Articles 7, 8 and 11 of PSL–37 were waived by defendants' continued acceptance of the rent without requiring performance or instituting action to terminate the lease.

Miller v. Reidy, 85 Cal.App. 757, 260 P. 358 (1927) considered the question of waiver of forfeiture by acceptance of rent. In *Miller, supra,* plaintiffs had leased premises to defendant providing for default in the event of a sub-lease. Defendant sublet the premises without the consent of plaintiffs. Plaintiffs notified defendant of the breach, demanded removal of sub-lessors and demanded return of the premises to them. Defendant continued after this notice to pay rent and plaintiffs accepted the rent but with this proviso:

"without prejudice to any of my rights under the lease of said premises."

The Court in holding that the acceptance of rent in these circumstances constituted a waiver by plaintiff says:

"This was a clear attempt to eat the cake and still keep it. His actions belie his words. Waiver is a question of intention. Alden v. Mayfield, 164 Cal. 6, 127 P. 45; Jones v. Della Maria, 48 Cal.App. 171, 191 P. 943; Myers v. Herskowitz, 33 Cal.App. 581, 165 P. 1031. For the lessors month after month to accept rents specified in the lease, and at the same time declare that there was a forfeiture, results in an irreconcilable inconsistency."

Plaintiff would have the Court read *Miller, supra,* for the principle that acceptance of rent after knowledge of that breach *ipso facto* waives forfeiture. Reading *Miller, supra,* properly, the Court must conclude that the concern of the Court in *Miller, supra,* was to determine the *intent* of the party to be charged with the waiver. Waiver, as contemplated by the law, is the voluntary relinquishment of a known right. Voli-

tion combines knowledge of the facts and intent to act with reference to the known facts. *Miller, supra,* makes this clear when the Court says:

"Dr. Miller knew that Reidy assigned or sublet . . . This was two years before suit was filed, and he accepted rent from Reidy even after that time. The very words of the receipt given by Dr. Miller compel the conclusion that when each one was signed *he regarded the lease as still in force.*" (emphasis supplied).

Plaintiff relies heavily on Kern Sunset Oil Company v. Good Roads Oil Company, 214 Cal. 435, 6 P.2d 71 (1931) as stating the law applicable to this case. In *Kern Sunset, supra,* plaintiff sought declaration of forfeiture of a lease on oil lands. The lease provided for the drilling and placing into production two wells each year until sixteen wells had been completed. By the time contemplated in the lease for the completion of the sixteen wells defendant had completed only thirteen wells. With this knowledge of the facts, plaintiff continued to receive the rental royalty for a period of five years without complaining of the failure of defendant to complete the sixteen wells. Plaintiff then served notice claiming a breach. Defendant completed another well. Plaintiff again served notice of breach and brought the action for forfeiture. During this period and even for three months after the filing of the action for forfeiture, the plaintiff continued to receive the royalty payments provided in the lease. In denying the forfeiture requested by plaintiff the Court says at page 440, 6 P.2d at page 73:

"The acceptance of rent by the landlord from the tenant, after the breach of a condition of the lease, with full knowledge of all the facts, is a waiver of the breach, and precludes the landlord from declaring a forfeiture of the lease by reason of said breach. This is the general rule, and is supported by ample authority."

The rationale for this clear principle of law is stated at page 445, 6 P.2d at page 76 as being:

> ". . . [T]hat by accepting the rent under these circumstances the lessor recognizes the existence of the lease, and that it is inconsistent and not permissible for a party to recognize the existence of a lease and accept benefits under it, and at the same time claim that it is forfeited and seek to recover the fruits of a forfeiture. . . ."

While distinguishing Linnard v. Sonnenschein, 94 Cal.App. 729, 272 P. 315, the Court in *Kern Sunset, supra,* makes clear that acceptance of the rent is not the sole determining factor. Acceptance of the rent must be "with full knowledge of all the circumstances of said breach," 214 Cal. at 447, 6 P.2d at 76.

Plaintiff in this case had made many requests for the extension of the time periods involved. As late as May 17, 1966 there were negotiations going on between the parties for the suspension of any action upon the default of plaintiff in Articles 7, 8 and 11 of Lease No. PSL–37. As the result of these negotiations it was agreed that plaintiff would increase the minimum rental being paid by 10% effective April 1, 1966 and action upon the default would be suspended until 60 days after delivery of a current appraisal of the minimum fair annual rental value of the leased property.

On September 20, 1966 plaintiff was given 60 days "to determine whether or not you will pay the newly established annual rental of $88,000, proceed with full development of the property based upon a new long term lease or surrender the property to the lessors." In answer to this notice plaintiff submitted a proposal for renegotiation of the lease agreements. This proposal, with modifications, was negotiated until September 23, 1969 when plaintiff was served with an order to show cause why the lease should not be cancelled and was given 60 days to cure the claimed defaults. Further negotiations ensued and finally on December 16, 1969 plaintiff was notified of cancellation of the lease.

Administrative proceedings were invoked which have finally come before this Court for resolution. Plaintiff does not by the facts shown bring itself within the conditions for excuse from forfeiture expressed in *Miller, supra,* and *Kern Sunset, supra.* Defendants have not conducted themselves in such manner as to permit the conclusion that they have waived any of the defaults of plaintiff. The parties were, up to the time the administrative proceedings were commenced, attempting to amicably determine their differences. The delays of the Department of Interior through its Bureau of Indian Affairs, joined by plaintiff raise serious questions of concern for Indian affairs which cannot be adequately answered within the framework of this litigation. The Department is charged with the responsibility of the management of its trust obligations in the best interest of Indian beneficiaries. This fiduciary duty carries with it—if not express—at least an implied requirement of diligence. The tripartite nature of Indian affairs—at least in the context of this case—points up the wisdom of review of these activities to assure that the exercise of these responsibilities remains sensitive to the desires—and more importantly to the needs of those our laws have been enacted to protect.

Judgment shall be entered for the defendants. This opinion shall serve as Findings of Fact and Conclusions of Law as permitted by Rule 52(a) of the Federal Rules of Civil Procedure.

By stipulation that the amount of damages suffered by defendants Lawrence Pierce and Inman McCoy resulting from the grant of the preliminary injunction herein was the sum of $———.

Judgment shall be for said defendants Lawrence Pierce and Inman McCoy and against plaintiff in the sum of $———.

## APPENDIX A

# United States Department of the Interior

### BUREAU OF INDIAN AFFAIRS
### WASHINGTON, D.C. 20242

IN REPLY REFER TO:
Real Prop. Mgmt.
Ten. & Mgmt.

CERTIFIED MAIL—RETURN RECEIPT REQUESTED

Schlesinger, Schlecht & McCullough
Attorneys at Law
P.O. Box 2928
Palm Springs, California 92262
Attention: Mr. Allen O. Perrier

Gentlemen:

I hereby sustain the decision of the Area Director, Bureau of Indian Affairs, Sacramento, California, to cancel Lease No. PSL–37, Contract No. 14–20–0550–806, as amended, between Carrie Pierce McCoy, deceased allottee No. PS–57, and Rancho Trailer Park, Inc. (predecessor of Sessions, Inc.). By letter of December 16, 1969, William D. Oliver, Acting Area Director, notified Mr. T. J. Sessions, president and chief stockholder of Sessions, Inc., that the subject lease was canceled for noncompliance with Article 7, *Improvements*, Article 8, *General Plan and Design*, and Article 11, *Completion of Development.*

Mr. Allen O. Perrier, on behalf of Mr. Sessions, timely appealed to the Commissioner of Indian Affairs the decision of the Area Director, admitting the violation of Article 11 but alleging that that obligation is dependent upon those arising under Articles 7 and 8 and due to the Area Director's failure to act in strict compliance with Article 8, Mr. Sessions was thereby excused from completing permanent improvements within the time limits prescribed by the subject lease. The petitioner further alleges that because the several lessors, and principally Lawrence Pierce, have arbitrarily refused to accept any of the improvement plans and proposals submitted, Mr. Sessions has been effectively and unjustifiably prevented from developing the leased premises.

In 1960, seven separate leases were executed between the lessee's predecessor, Rancho Trailer Park, Inc., and seven members of the Agua Caliente Band covering approximately 34.5 acres of Agua Caliente allotments. These leases are identical except for differing provisions relating to rent, descriptions of land, party and improvement obligations. In 1967, the total acreage was valued at $1,100,000 with a fair annual rental value of $88,000. Approximately two-thirds of this value is assigned to 1,470 feet of commercial frontage along the South Palm Canyon Drive containing 8.4 acres. The primary purpose of these leases is to establish, through the efforts and expense of the lessee, a commercial installation wherein the lessors are to receive an annual fixed rental plus a certain percentage, prorated according to the appraised value of each parcel of the leased premises, of the gross receipts realized from the operation of the total leased area. The sub-

ject lease, PSL–37, covering two acres within this commercial area, is for a period of 25 years, beginning on June 1, 1960, with an option to renew for one 25-year period. By the terms of the lease the appellant was to have submitted, for review by the Area Director, a general plan and architect's design of a proposed commercial project on or before January 27, 1963, and, if accepted, was to have completed, on or before January 27, 1966, the construction of such improvement having a value of $70,000 against which offsets would be allowed in the amount of $1,500 for each improved trailer space on the leased premises.

At the time all of the leases were executed it was the intent of the parties, as evidenced by the language in Articles 7 and 8 of all the leases, that the property would be developed to its highest and best use through the improvement of the entire commercial frontage along South Palm Canyon Drive. However, while the overall development is common to all of the seven leased properties, the prescribed dollar value of permanent improvements is an obligation to be met by the lessee separately for each lease.

Appellant admits noncompliance of Article 11, dealing with completion of the development and improvement of the subject leased premises, but argues that his obligation is dependent upon the compliance by the Sacramento Area Director, in accordance with Article 8, to either approve or disapprove of the plan and design submitted by petitioners and to state his reasons for disapproval thereof. It is the opinion of this office that Plan No. 1, submitted with the lessee's letter of March 24, 1966, is not a plan to commercially develop the leased premises in accordance with the terms and conditions of the lease.

The appellant's development proposal in Plan No. 1 involves construction of improvements and development along allotment lines as is outlined in the several leases, including the construction of an eight-unit apartment-hotel on the subject leased premises at a value of $86,000. However the proposal requires that all the lessees and in particular, Mr. Pierce, agree to dedicate to public use a certain portion of the leased premises. Mr. Pierce subsequently rejected the proposed plan for the reason that its implementation would require the extension of Belando Road through PSL–37 which, appellant admits in his letter to the Bureau of February 11, 1963, would completely destroy all future commercial use of the subject property.

The lease does not provide for grants of right-of-way or dedication of portions of the leased premises. In the absence of an express lease provision to dedicate, any intent to dedicate here must necessarily be on an implied basis. While the intent to dedicate land to public use may be inferred from words or acts, Sacramento v. Jensen, 146 Cal. [App.]2d 114, 303 P.2d 549 (1956), as the cited case shows, such intent must be established by clear and unequivocal evidence. The mere execution of this commercial lease, without more, certainly does not infer an intent to dedicate land for public use when to do so would completely destroy all commercial use of the property not only during the 50-year lease term but after its termination.

Therefore, since Plan No. 1 requires a dedication of land not authorized by the lease, it is not a plan to develop the subject property

in accordance with the terms and conditions of the lease and as a result the Sacramento Area Director's obligation, under Article 8, to approve or disapprove of the plan, with reasons therefor, never arose.

In his letter of December 16, 1969, Acting Area Director Oliver stated that the lease is canceled as of that date. However, by our telegram to you on February 20, 1970, we suspended the lease cancellation during the pendency of the appeal to this office, and instructed the lessee to resume and keep current the rental payments as required by the lease.

The Area Director's decision to cancel aforesaid lease is sustained. Accordingly, your appeal to this office from the decision to cancel said lease is denied and *the lease, as reinstated by the aforementioned telegram, is hereby canceled effective 30 days from the date of your receipt of this letter.* Thereupon the lessee shall surrender possession of the premises to the Indian owners and remove from said premises all of the lessee's personalty.

Sincerely yours,
Louis R. Bruce
Commissioner

AFFIRMED:      JAN. 11 1971
                      (Date)

Harrison Loesch
Assistant Secretary of the Interior

## APPENDIX B

UNITED STATES DEPARTMENT OF THE INTERIOR
OFFICE OF THE SECRETARY        41541
WASHINGTON, D. C. 20240

Feb. 12, 1971

Gentlemen:

This replies to your January 29, 1971 letter requesting reconsideration of our January 11, 1971 decision to cancel Lease No. PSL–37, Contract No. 14–20–0550–806, as amended, between Carrie Pierce Mc-Coy, deceased allottee No. PS–57, and Rancho Trailer Park, Inc. predecessor of Sessions, Inc.

In the alternative, you request us to extend the time of lease termination from 30 days to 90 days after your receipt, on January 18, 1971, of the notice of cancellation.

We deny reconsideration of our decision for the following reasons:

1. Our decision does not admit that there has been a failure on the part of the Secretary or his authorized representative to comply with the provision, contained in Article 8, to approve or disapprove, with reasons therefore, a general plan and architect's design. The decision states that since Sessions, Inc. failed to submit a plan to develop the subject property in accordance with the terms and conditions of the lease, the duty to act, pursuant to Article 8, never arose. In other words, the failure under Article 8 is that of the lessee, not the Secretary or his authorized representative.

2. The question is not whether the power exists to dedicate restricted Indian lands for public purposes but whether the lease in question permitted such dedication. For the reasons stated in our decision it is clear that the lease does not provide for such dedication.

3. The record on appeal reflects that you had ample opportunity to present arguments in support of your position. The appeal record contains no material submitted by the lessor in opposition to your appeal.

4. Assuming, arguendo, that an intent to develop the leasehold to its highest and best use is not contained in Articles 7 and 8 of the subject lease, the statement in our decision to which you refer is of no consequence as respects the action taken since the cancellation is not for failure to develop to the highest and best use but for failure to develop as required by Article 11.

5. As regards Mr. Pierce's objections to Plan No. 1, on November 10, 1966, two successive meetings were held in the Palm Springs Office of the Bureau of Indian Affairs to discuss the proposals submitted by Mr. Sessions on March 24, 1966. The minutes of that meeting reveal that the Lessors, including others besides Mr. McCoy, were unwilling to accept Plan No. 1 not only because the plan did not involve the redevelopment of the entire trailer park but also because of the requirement of dedication of portions of the leasehold estates to the city for public use.

We find no basis for authorizing an extension of time for the termination of the subject lease. The lessor specifically opposes your request for an extension, and, while we understand the corporate lessee has a problem in deciding its course of action because of the recent death of its principal shareholder and executive officer, that problem does not justify the requested extension of the defaulted lease. Consequently, the lease will terminate on February 17, 1971.

Sincerely yours,

(Sgd.) Orme Lewis, Jr.
Deputy Assistant Secretary of the Interior

Schlesinger, Schlecht & McCullough
Attorneys at Law

Post Office Box 2928

Palm Springs, California 92262

cc: Area Director, Sacramento