**SESSIONS, INC., a California Corporation, Plaintiff-Appellant,**

v.

**Rogers C. B. MORTON, Secretary of the Interior et al., Defendants-Appellees.**

No. 72–3062.

United States Court of Appeals,
Ninth Circuit.

Jan. 31, 1974.

Rehearing Denied March 18, 1974.

James M. Schlecht, Allen O. Perrier (Argued), Schlecht, McCullough & Perrier, Palm Springs, Cal., for plaintiff-appellant.

Kent Frizzell, Asst. Atty. Gen., Carl Strass, Peter R. Steenland (Argued), U. S. Dept. of Justice, Washington, D. C., William D. Keller, U. S. Atty., Philip S. Malinsky, Asst. U. S. Atty., Los Angeles, Cal., for defendants-appellees.

Before HAMLEY and CHOY, Circuit Judges, and SMITH,* District Judge.

* The Honorable Russell E. Smith, United States District Judge for the District of Montana, sitting by designation.

856

CHOY, Circuit Judge:

Sessions, Inc., a California corporation and lessee of certain Indian lands, filed a complaint in the district court seeking review under 5 U.S.C. § 702 (1970) [1] of the Secretary of Interior's (the Secretary) decision cancelling its lease, and a declaration of its rights against the Indian lessors, Pierce and McCoy, under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1970).[2] The district court determined that the Secretary's administrative action merely permitted the Indian lessors to invoke the default provisions of the lease, and accordingly found nothing to review under the Administrative Procedure Act.[3] The court also held Sessions was in default for not performing its obligations under the lease. Sessions appeals from judgment for the Indian lessors. We affirm.

The facts of this case are recited in the district court's opinion, and in a part of the administrative record reprinted in the appendix thereto. 348 F. Supp. 694 (C.D.Cal.1972). Since these facts are for the most part undisputed it is unecessary that they be fully repeated here. Essentially this appeal involves the cancellation of one of a total of seven leases acquired by Sessions on January 1, 1962. The leases are identical except for differing parties, land descriptions and rental arrangements. The lessors are members of the Agua Caliente Band of Mission Indians whose land is held in trust for their use and benefit by the United States. Mission Indian Relief Act of January 12, 1891, 26 Stat. 712.

The lease in question, No. PSL–37, covers about two acres of land at the south end of a larger 34.5 acre tract leased by Sessions from other Indian members of the Band. The land is located on South Palm Canyon Drive, a principal street in Palm Springs California. The lease requires Sessions to fully develop and improve the land, which was then being used as a trailer park. To this end, the terms of the lease provide that Sessions was to submit to the Secretary's representatives in the Bureau of Indian Affairs (B.I.A.) for approval, a general plan and architect's design for the leasehold's improvement by January 27, 1963. If approved, construction of such improvements was to be completed by January 27, 1966.

After much fruitless negotiation between Sessions, the Indians, and B.I.A. representatives, and with still no construction even begun, on July 10, 1969, Pierce and McCoy requested that the B.I.A. cancel their lease. On September 23, 1969 the B.I.A. mailed to Sessions a notice that it was in default under the lease. On October 16, 1969 Sessions was given sixty days to cure the alleged defaults. Upon Sessions' failure to cure the defaults, the Acting Area Director of the B.I.A. notified Sessions the lease was cancelled on December 16, 1969. The Commissioner of the B.I.A. sustained the cancellation of PSL–37 on December 16, 1970, and his decision was affirmed on January 11, 1971 by the Secretary. This action in the district court followed.

Sessions concedes that no general plan and architect's design were submitted by the 1963 date and that no construction was completed by 1966. Although thus admitting its noncompliance with the lease, Sessions maintains that its obligations under the lease were extended and default thereafter excused when the B.I.A. did not fulfill its duties under the lease to either approve or disapprove,

1. Section 702 provides: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

2. Section 2201 provides in pertinent part: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

3. The Secretary does not appeal from this decision.

with reasons, a general plan submitted to them on March 24, 1966. While there were three extensions, we do not agree that Sessions was excused from its performance.

By letter of March 24, 1966 Sessions allegedly submitted two design plans for the improvement of PSL–37 to the Area Director of the B.I.A.[4] The first plan called in part for the construction of an eight-unit apartment-hotel on the premises. The second, though outlining the same development for PSL–37, was for a far more elaborate development of the entire 34.5 acres. Sessions does not challenge the B.I.A.'s failing to respond to the second plan, for it admits that this plan was not in accordance with the terms of the lease since it required substantial changes and amendments in the existing lease. Rather, Sessions relies solely upon the B.I.A.'s failure to act on the first plan to support its contention that this excused its further obligations.

■■ Both plans required that the Indians dedicate part of their land to the city of Palm Springs for the widening of South Palm Canyon Drive, and the extension of the Belardo Road through the middle of' their property. The lease as written contained no mention of this as a requirement for the property's development. Nor can it be fairly inferred that any dedication was ever intended, since an intent to dedicate land for public use must be established by a clear manifestation of the owner's desire to part with the land. Irwin v. Dixion, 9 How. 10, 30, 13 L.Ed. 25 (1850); Munoz v. Porto Rico Ry. Light & Power Co., 74 F.2d 816, 820–821 (1st Cir. 1934); Sacramento v. Jensen, 146 Cal.App.2d 114, 303 P.2d 549 (1956). Accordingly, the district court did not err by concluding that this plan required a substantial amendment to the lease. This being so, the B.I.A. was not required to approve or disapprove the plan since it was not one to commercially develop the property within the terms of the lease.[5]

■ Sessions contends that Indian approval of street dedications was an implied obligation of the lessors. It is true that there is an implied covenant in every contract that each party will do nothing to deprive the other of the benefits arising from the contract. Vanadium Corp. v. Fidelity & Deposit Co., 159 F.2d 105, 108 (2d Cir. 1947). *See generally* 6 Williston on Contracts § 887 at 420–55 (3rd ed. 1962). This "covenant of fair dealing" imposes the duty on each party to do everything that the contract presupposes will be done in order to accomplish the purpose of the contract. However, this implied obligation "must arise from the language used or it must be indispensable to effectuate the intention of the parties." United States v. Outer Harbor Dock & Wharf Co., 124 F.Supp. 337, 344 (S.D.Cal. 1954). As indicated, there is absolutely no mention in the lease of land dedication. And, it is unclear whether any development of PSL–37 required such, the

---

4. The district court found the evidence confusing as to whether plans were received on this date and stated that "it appears that no plans were ever received by the Area Director of the Bureau of Indian Affairs." 348 F.Supp. at 697 n. 1. Since the district court reached no firm conclusion on this point, and because the record shows that Sessions did send a letter containing such plans on this date, we must assume that it was received in due course by the B.I.A. At any rate, Sessions made the same proposals to the Indians and the B.I.A. through its attorneys on October 28, 1966. It was these plans which the district court found required substantial changes in the terms of the lease. *Id.* at 698.

5. Our holding in this case is a narrow one since we conclude that the B.I.A. was under no obligation to respond to Sessions' first plan. Hence, we need not consider the consequences of the B.I.A.'s failure to faithfully discharge its responsibilities toward the Indians in the management of the trust obligations. Nevertheless, we doubt that the B.I. A.'s negligence can be imputed to the Indians so as to estop them from exercising their rights under contract. *See* United States v. Forness, 125 F.2d 928, 932–933 (2d Cir.), cert. denied sub nom., City of Salamanca v. United States, 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764 (1942).

only indication in the record being that the plans which Sessions proposed required street dedications. Where the Indians have expressed an unequivocal opposition to any transfer of their land, we can not assume that this was an implied covenant in the lease, which would have been made express if only it had been called to the parties' attention. *See* United States v. Outer Harbor Dock & Wharf Co., *supra* at 344.

Moreover, there was just cause for the Indians' refusal to dedicate their land. Apparently, the dedication of Berlardo Road through the center of the land would have destroyed future commercial use of the property. In a letter to his attorney dated November 11, 1965, T. J. Sessions, president of Sessions, Inc. stated, "if Belardo Road is a requirement [for city approval of the development] both of the projects would be killed and there would be great loss in the value of the subject property." The Indians' reluctance in these circumstances to dedicate their land was hardly unreasonable.

■ Rent for the subject land has been paid by Sessions and accepted by the Indians since the time of Sessions' default. Sessions contends that by accepting such rent, the Indians have waived the right to claim a breach of the lease's terms. While it is a generally stated rule that the lessor's acceptance of rent after the lessee's breach implies a waiver of that breach, this concept, involving the knowing relinquishment of a right, is a matter of intent which necessarily depends on the factual circumstances of each case. Jose v. Iglesias, 462 F.2d 214, 216 (9th Cir. 1972); In re Wil-Low Cafeterias Inc., 95 F.2d 306, 309 (2d Cir.), cert. denied,

sub nom., Wil-Low Cafeterias Inc. v. 650 Madison Avenue Corp., 304 U.S. 657, 58 S.Ct. 950, 82 L.Ed. 1533 (1938). Thus, "[a]cceptance of rent is evidence to be considered by the trier of fact, but it is not necessarily conclusive." Jose v. Iglesias, *supra,* 462 F.2d at 216; *cf.* Bledsoe v. United States, 349 F.2d 605, 607 (10th Cir. 1965); Smith v. United States, 113 F.2d 191, 193 (10th Cir. 1940).

■ Negotiations among the parties continued for some three years after Sessions defaulted in January, 1966. Some of the options being considered during that time were whether Sessions would pay an increased rental, proceed with full development based on a new, long term lease, or surrender the premises to the lessors. The district court found that under these circumstances the Indians had not so conducted themselves as to permit the conclusion that they had waived Sessions' default. This finding was not clearly erroneous.

■ Although we might have concluded differently from the district court were this issue being tried before us in the first instance, it is not our function to review the evidence *de novo.* Zenith Corp. v. Hazeltine, 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). Under Rule 52(a) of the Federal Rules of Civil Procedure, we must accept the district court's findings of fact unless we are convinced that they are clearly erroneous. We are not left with a definite and firm conviction that a mistake was committed by the district court. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

Affirmed.