**C.I.T. CORPORATION, a New York Corporation, Plaintiff-Appellee,**

v.

**LEE PONTIAC, INC., etc., et al., Defendants,**

**Ralph Gorringe, Defendant-Appellant.**

**No. 73–3230.**

United States Court of Appeals, Ninth Circuit.

April 4, 1975.

Gordon S. Thatcher (argued), Rexburg, Idaho, for defendant-appellant.

Michael A. Greene (argued), Boise, Idaho, for plaintiff-appellee.

Before BARNES and CHOY, Circuit Judges, and EAST,* Senior District Judge.

## OPINION

EAST, Senior District Judge:

### THE CASE

This diversity action was brought by C.I.T. Corporation (C.I.T.) against Lee Pontiac, Inc. (Pontiac) and its guarantors for a judgment on a deficiency on two secured transactions after the repossession and sale of the collateral.

The defendants in the District Court counterclaimed against C.I.T. and interplead Dick Nolan seeking damages resulting from an alleged conspiracy between C.I.T. and Nolan to minimize the sale price of the collateral involved in this action.

The action was tried to the District Court without a jury. The District Court filed its memorandum decision in which it resolved all factual and legal issues against the defendants and on July 20, 1973 entered its findings of fact, conclusions of law and judgment in favor of C.I.T. and against the defendants for the sum of $89,076.97 plus interest and costs. From that judgment, defendant Ralph Gorringe appeals. We affirm.

### STATEMENT OF FACTS

On March 10, 1969, Pontiac purchased a 1969 Piper Navajo aircraft (88–Y aircraft) and in return executed and delivered to C.I.T. a negotiable promissory note for $149,600 and an amended aircraft chattel mortgage securing that note. As part of this secured transaction, Gorringe and others executed and delivered an agreement to C.I.T. guaranteeing the payment of all Pontiac's obligations.

On June 3, 1969, Pontiac purchased a second aircraft (94–L aircraft) from Intermountain Piper, Inc. under an installment purchase security agreement. On the same date, Intermountain Piper assigned this aircraft security agreement to C.I.T. For convenience, the aforesaid promissory note and chattel mortgage and the installment purchase security agreement will be referred to jointly as aircraft security agreements.

Pontiac leased the two airplanes to Transmagic Airlines. On August 24 and September 3, 1971, Pontiac and its lessee failed to make the payments accruing under the aircraft security agreements. On November 29, following and pursuant to the terms and provisions of the aircraft security agreements and by written notice to Pontiac on November 29, C.I.T. accelerated the payment dates and declared the entire amount of unpaid principal of each of the aircraft security agreements to be immediately due and payable and demanded possession of the aircraft.

C.I.T. directed Dick Nolan, an aircraft dealer, to pick up the aircraft in Twin Falls, Idaho and ultimately deliver them to Boise, Idaho.

C.I.T. then gave notice to the defendants of its intention to sell the aircraft at a public sale in Boise on January 28, 1972. C.I.T. gave notice of the sale to 43 prospective buyers and requested suggestions from defendants as to prospective buyers. C.I.T. placed a notice of sale in *General Aviations News, Trade-a-Plane,* and *The Idaho Statesman* advertising the sale to be held on January 28, 1972.

Dick Nolan attempted to return both aircraft to Boise for the sale, but due to

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

a combination of bad weather and mechanical failure, only the 88–Y aircraft was present at the sale. Several bidders appeared at the sale and bid on both aircraft. Dick Nolan, the highest bidder, purchased the aircraft for a combined price of $111,000.

After deducting costs, unpaid interest and reducing principal, there was a deficiency owing on the aircraft security agreements.

## DISCUSSION

Gorringe asserts that the District Court's findings of the reasonable value of the two. aircraft, being a great undervaluation of the true reasonable value, were erroneous and not supported by sufficient evidence.

It appears from the record that the evidence concerning the reasonable market value of the aircraft at the time of sale was conflicting. The District Court had the advantage of seeing and hearing the witnesses and had full opportunity to judge their credibility. The District Court's findings of value indicate that it accepted the valuation of the two aircraft at $109,000 as testified to by C.I.T.'s witness, Dick Nolan, a dealer in aircraft with 25 years experience, and rejected higher valuation placed by other witnesses. That choice was the prerogative of the District Court and we are not convinced that the findings are clearly erroneous. Fed.R.Civ.P. 52(a); Sessions, Inc. v. Morton, 491 F.2d 854, 858 (9th Cir. 1974).

Gorringe contends the District Court erred in finding and concluding that the Idaho usury statute was not applicable to the installment purchase security agreement covering the 94–L aircraft. We reject the contention. Idaho Code § 28–22–105 prohibits the charging of interest in excess of 12 percent on loans, and § 28–22–107 provides for a monetary penalty.

The time price under the 94–L aircraft purchase agreement was 13.1 percent above the cash price. The defendants at trial urged that the seller of the 94–L aircraft and Pontiac agreed on a cash price without any terms of installment sale being agreed upon and that C.I.T. was fully aware of that situation and involved in arranging the terms of the financing. The District Court found and concluded to the contrary because the terms of the installment purchase security agreement unambiguously stated the cash price, down payment, adjustments and finance charges, and presented a time purchase price. Under the Idaho authorities, a sale of personal property is not usurious when the sale is made for one price if cash is paid and for a higher payment if payment is deferred or if payment is made in future installments. Smith v. Sherwood and Roberts, Spokane, Inc., 92 Idaho 248, 441 P.2d 158 (1968); Petersen v. Philco Finance Corporation, 91 Idaho 644, 428 P.2d 961 (1967).

There is no evidence that C.I.T. and the seller colluded or conspired to circumvent the usury law by using the aircraft security agreements for the financing of the purchase of the 94–L aircraft. We conclude that the District Court's ruling was correct.

Gorringe next contends that the District Court erred in holding that the repossession sale at Boise was commercially reasonable since the absence of the 94–L aircraft made inspection by prospective purchasers impossible. We are satisfied that Gorringe relied upon archaic law and misconstrues Section 28–9–504(3) of the Idaho Code which provides:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. . . . "

"Commercially reasonable," although repeatedly used in the Code, is not specifically defined. Draftsmen deferred to case law for development of the precise meaning. 1 Coogan, Hogan

**210**

& Vagts, Secured Transactions Under U.C.C., § 8.04(2)(a) (1968). This development is just underway. We are cited to no Idaho authority and our independent search reveals none defining "commercially reasonable." In re Zsa Zsa Limited, 352 F.Supp. 665 (S.D.N.Y.1972), the court said at 670:

> "It is the aggregate of circumstances in each case—rather than specific details of the sale taken in isolation— that should be emphasized in a review of the sale. The facets of manner, method, time, place and terms cited by the Code are to be viewed as necessary and interrelated parts of the whole transaction."

We believe the Supreme Court of Idaho if called upon would agree to the rationale of *Zsa Zsa.* The record reveals ample evidence to support the District Court's findings that the sale was commercially reasonable under the rationale of *Zsa Zsa.* Good and sufficient notice was timely given to a reasonable number of prospective buyers. No prospective bidders present at the public sale questioned the absence of the plane and asked for inspection. The circumstances attending the absence of the plane were beyond the control of C.I.T. and excusable. The holding of the sale at the time and place scheduled was to the best interests of all and a fair price was secured. Coupled with the complete absence of any showing or evidence on the part of Gorringe that a better price would have been received had the sale been continued until the second aircraft was available for inspection, we conclude that the District Court's findings were not clearly erroneous. Fed.R.Civ.P. 52(a); Sessions, Inc. v. Morton, *supra.*

Lastly, Gorringe's claim of C.I.T.'s bad faith application of the proceeds of the sale and assertions and claims of deficiency under the security agreements are without substance in fact and merit.

We reserve the appellee's motion for attorney fees on appeal for later disposition.

Affirmed.