602 P.2d 815

GULF HOMES, INC., Plaintiff/Appellee,

v.

Richard A. GOUBEAUX and Linda G. Goubeaux, his wife and each of them, Defendants/Appellants.

No. 2 CA–CIV 3043.

Court of Appeals of Arizona, Division 2.

Feb. 7, 1979.

Rehearing Denied March 14 1979.

Review Granted April 3, 1979.

Dan A. Sinema, Tucson, for plaintiff-appellee.

Sando & Hardy by David T. Hardy, and Ronald W. Sommer, Tucson, for defendants-appellants.

## OPINION

RICHMOND, Chief Judge.

Gulf Homes, Inc., following its repossession and purchase of a mobile home at the repossession sale, commenced an action against defendants for a deficiency of $2,416.72 under the contract for sale executed by the parties. Defendants in their answer alleged they entered into the contract as a result of fraud or mutual mistake, and by amendment also alleged the contract was unconscionable and unenforceable.[1] Later, they added a counterclaim seeking compensatory and punitive damages for common law fraud and violation of both the Consumer Fraud Act and the Truth in Lending Act. Both parties sought attorney's fees.

A jury trial resulted in verdicts of $1,640 in favor of Gulf Homes on the complaint and $1,000 in favor of defendants on their counterclaim as the statutory penalty under the Truth in Lending Act. 15 U.S.C. § 1640(a). The court awarded Gulf Homes an additional $1,500 in attorney's fees under A.R.S. § 12–341.01, and defendants $500 attorney's fees under 15 U.S.C. § 1640(a).

Defendants on appeal raise eight questions pertaining variously to the refusal or modification of certain jury instructions, evidentiary rulings, denial of their motion for a new trial based on insufficiency of the evidence, and the award of the $1,500 attorney's fee. We affirm the judgment.

The initial dispute was over the substance of the contract defendants signed but testified they had not read before signing because they relied on Gulf Homes' advertising and the representations of its agent. Defendant Richard Goubeaux testified he was led to believe he was renting the mobile home for one year with an option to apply a non-refundable down payment and monthly rental payments to the purchase price on six months notice. Instead, the contract provided for purchase of the mobile home, with a down payment of $550 and 132 monthly installments of $145, but that the agreement was terminable by the purchasers on six months notice upon certain conditions if not less than six payments had been made on time and the six subsequent payments also were made on or before their due dates. It was undisputed that no payments had been made after the down payment, and that defendants had abandoned the mobile home approximately two months after they moved in because Mrs. Goubeaux decided she did not want to live in it. Thereafter Gulf Homes took possession of the mobile home at its location in Tucson, sent defendants by certified mail a notice of sale that was returned unclaimed, posted notice and advertised the sale, which then was conducted at the Gulf Homes office in Phoenix. No one appeared to bid against Gulf Homes.

Defendants first contend it was error to refuse their jury instructions to the effect that in the absence of exceptional circumstances the sale was commercially unreasonable and illegal because it was held out of the presence of the collateral. If appropriate, the instructions would have amounted to an instructed verdict on the complaint, though no motion for directed verdict was made. Defendants argue that the absence of the collateral establishes a violation of the procedures under the Uniform Commercial Code for resale upon default.[2] They rely on *Scottsdale Discount Corp. v.*

---

1. A.R.S. § 44–2319.

2. A.R.S. § 44–3150.

*O'Brien,* 25 Ariz.App. 320, 543 P.2d 158 (1975). Although *Scottsdale* was not decided until 1975, it involved a resale under the Uniform Conditional Sales Act which was repealed in 1967 with the adoption of the UCC. The case thus turned upon the "public auction" requirement of the UCSA rather than the UCC standard of "commercial reasonableness."

A number of courts have held that the determination of commercial reasonableness depends on an examination of all the circumstances, and the manner, method, time, place, and terms are to be viewed as interrelated parts of the whole transaction. *See, e. g., C.I.T. Corporation v. Lee Pontiac, Inc.,* 513 F.2d 207 (9th Cir. 1975). The code itself offers some specific guidelines as to what is meant by commercial reasonableness. It provides that "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner," and "[i]f the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner." [3]

There is no specific requirement that the collateral be present at the time of the sale, and the code suggests the opposite. Any sale of goods by a secured party after default is subject to the article on sales. [4] The section in the article on sales which sets out the seller's remedy of resale states that "[i]f the goods are not to be within the view of those attending the sale notification of sale must state the place where the goods are located and provide for their reasonable inspection . . . ." [5] By establishing requirements for a sale of collateral where the goods are not present, the code by implication authorizes such a sale.

Here, the notice of sale was posted on the mobile home in Tucson, three places in Phoenix, advertised in a newspaper, and other mobile home dealers were invited to bid. There was testimony that the procedure was in keeping with the general practices of mobile home dealers in repossession sales. The mobile home was sold for $7,000 and there was testimony that its value did not exceed that amount. The notice of sale included the location of the collateral, thus providing the opportunity to inspect as required by the statute. Such evidence establishes compliance with the minimum requirements for disposition of property upon default. The sale, therefore, was not as a matter of law commercially unreasonable. The presence or absence of the collateral during a sale by the secured party is only one of the factors to be considered in a determination of the commercial reasonableness of the sale, even where there is no opportunity to inspect. *C.I.T. Corporation v. Lee Pontiac, Inc.,* supra. The instructions were properly refused.

For the reasons already expressed, there was substantial evidence to support the jury's verdict on the complaint and defendants' motion for new trial was properly denied.

The record does not support defendants' other three contentions regarding jury instructions. It does not reflect a proper objection to modification of an instruction defining the obligation of the selling creditor, which therefore may not now be assigned as error. 16 A.R.S. Rules of Civil Procedure, rule 51(a). Nor do we consider two separate questions directed to another modification that does not appear in the record. *Fulton v. Johannsen,* 3 Ariz. App. 562, 416 P.2d 983 (1966).

---

3. A.R.S. § 44–3153(B).

4. A.R.S. § 44–3150.

5. A.R.S. § 44–2385(D)(3).

■ We also reject defendants' attack on two evidentiary rulings; the exclusion of verified pleadings from two unrelated actions, and the admission of testimony by the Gulf Homes president of the amount of the deficiency. The pleadings, referring to "delinquent rent" and "rental period" under contracts similar to the one at issue, were offered to impeach the president's testimony that such contracts were never represented as rental agreements. The admission of evidence is a matter largely within the discretion of the trial court. *Throop v. F. E. Young and Company,* 94 Ariz. 146, 382 P.2d 560 (1963). We find no abuse of that discretion in the trial court's exclusion of the pleadings as impeachment on a collateral matter. *State v. Williams,* 111 Ariz. 511, 533 P.2d 1146 (1975).

■ Defendants have cited no authority for their other contention that the president should not have been permitted to testify as to the amount of the deficiency without first introducing the formula by which it was computed. They argue that there was no showing that the witness had personal knowledge of the matter. Inasmuch as the president described how the deficiency was computed from the terms of the contract in evidence, the argument is without merit. Although he testified to the identical amount alleged in the complaint filed nearly two years earlier, defendants did not challenge the computation in cross-examination or by other evidence.

■ Finally, defendants argue that there was no basis for the award of $1,500 as attorney's fees because the lawyer for Gulf Homes failed to include a reasonable hourly rate in his affidavit of hours spent on the case. The deficiency was cured, however, in the affidavit of defendants' counsel supporting their claim for attorney's fees under the Truth in Lending Act, which sets forth a rate supporting both awards.

Affirmed.

HOWARD and HATHAWAY, JJ., concur.